Case 39.—ACTIONS BY MAX BLOOM AND OTHERS AGAINST
J. M. SAWYER AND OTHERS, AND BY THE SAME PLAIN-
TIFFS · AGAINST WM. SKAGGS, TO QUIET TITLE TO
CERTAIN LANDS IN GRAVES COUNTY.—October 26.

## Bloom, &c. v. Sawyer, &c.
## Same v. Skaggs.

Appeals from Graves Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for defendants.   Plaintiffs appeal.   Af-
firmed.

1. Records—Destruction of Record—Presumption—Where the rec-
ord of a suit in which a judgment awarding dower to a
widow was rendered was destroyed, it will be presumed that
the record contained evidence justifying the judgment in
favor of the widow, that her husband had died before its ren-
dition, and that she had a previous claim to unassigned
dower as widow.

2. Dower—Rights of Widow—Where an owner of an undivided
interest in land died without procuring a partition thereof,
his widow could not claim any certain part as her dower in-
terest, but her right of dower merely followed the husband's
interest.

3. Same—Judgment Awarding Dower—Rights Conferred—A judg-
ment awarding to a widow her dower gives her an estate of
freehold for life in one-third of her husband's land, where
a husband died seized as a tenant in common of an undivided
three-fourths of a tract of land, and the court decreed dower
to the widow, she took an estate for life in a third of the un-
divided three-fourths, and became a tenant in common with
the owner of the other interest.

4. Tenancy in Common—Adverse Possession—Where a widow,
after the rendition of a judgment awarding her dower in the
undivided three-fourths interest in land of her deceased hus-
band, entered on the premises, her entry inured to the bene-
fit of the owners of the other interest in the land and was
not adverse to them, and a purchaser of the dower right
who took possession did not hold adversely to the cotenants.

Bloom, &c. v. Sawyer, &c.—Same v. Skaggs.

5. Same—The entry of a person on land under a conveyance which purports to dispose of the whole, though the grantor is but a joint tenant, is an entry of the whole in severalty, and is adverse to the other tenants.

6. Same—An owner of an undivided three-fourths of a tract of land died, leaving a widow to whom dower was awarded. The widow conveyed her dower right to one who conveyed it to another, and he conveyed, by deed without warranty, the whole tract in fee simple. The grantee in the latter deed took possession of the whole tract, and he continuously claimed the property adversely as his own. Held—That the latter deed and possession under it were sufficient to set the statute of limitations in motion against the cotenants.

7. Same—Where the possession of a grantee of a half interest in a tract of land was for himself and his cotenant, the possession was adverse to the title of a third person, and lapse of time barred his right to recover the possession.

8. Vendor and Purchaser—Suit for Purchase Money—Limitations— A purchaser in an executory contract for the sale of land, who looks to his vendor for title, can not rely on limitations as a bar to a suit to recover the balance of the purchase money; but a purchaser, relying on his adverse possession for a time equal to the statutory period, may do so.

9. Same—A purchaser contracted to purchase the vendor's land, and paid a part of the price, but did not take a deed. Subsequently the purchaser conveyed to another and let him into possession, and the latter's interest was conveyed to a third person. The third person paid in full for the land, and held it, together with his immediate grantor, for over 15 years. Held—That a suit by the vendor to recover the balance of the purchase price contracted to be paid by the purchaser was barred by limitations.

D. G. PARK for appellant.


POINTS AND AUTHORITIES.

1. Nature of dower recovered by judgment. (Newell on Ejectment, 28, sec. 15; Hanna v. Gay, 79 Ky., 499; 25 Ky. Law Rep., 1794-6; 10 Amer. & Eng. Enc. of Law, 174-5-6; 39 Amer. St. Rep., 19 33-4-5, note; 14 Cyc., 1002, section E; 6 L. R. A., 371, 373-4; Freeman on Cotenancy, 2d Ed., secs. 107-8; 100 Ky., 724-5.)

2. Nature of dower tenure. (Reeves on Real Property, secs. 566-7-8-9 and 570; Guthrie v. Guthrie, 25 Ky. Law Rep., 1702; 10 Amer. & Eng. Ency. of Law, 2 Ed., 152, note; 39 Amer. St. Rep., 34-5, note; 5 Dana, 180-1; 3 Dana, 371-4; 100 Ky., 724-5; Tiedeman on Real Property, sec. 135.)

3. Nature of tenancy in Common. (Freeman on Cotenancy, 2d Ed., secs. 86-7; Reeves on Real Property, sec. 78.)

4. Why the possession is not adverse.

5. Possession can not be adverse as to one-third of three-fourths, which is one-fourth of the whole. (5 Bush, 25, 31-2; 14 Bush, 78, 85; 86 Ky., 240, 245; 105 Ky., 190, 196; 25 Ky. Law Rep., 21-23; Newell on Ejectment, 714, sec. 19; 25 Ky. Law Rep., 1701-2.)

6. Possession of Sawyers, etc., under Anderson-Bolinger-Smith deed. (1 Amer. & Eng. Ency. of Law, 2d Ed., 796-7-8, note 1; 801-2-3-4-5 and note; 8 Dana, 403, 430 et seq.; 94 Am. Dec., 350-358, note; Freeman on Cotenancy, 2d Ed., secs. 229, 230, 241-2; 2 Am. St. Rep., 281-4, note; Newell on Ejectment, 130-4-5, 11, 17, 18; 2 Dembitz, 1405-6, notes 220, 227; Greenhill v. Biggs, 85 Ky., 155; 7 Am. St. Rep., 579; s. c., note.)

7. Law of appellants' case. (Freeman on Cotenancy, 2 Ed., secs. 439-40, 446-7, 449-50; Overton, &c. v. Woolfolk, 6 Dana, 371-2; Scott v. Scott, 85 Ky., 390.)

8. Williams' interest. (Freeman on Cotenancy, 2 Ed., sec. 243; 2 Dembitz, 1405-6, notes 220, 277.)

9. Lots excepted.

10. Parties concluded by the old judgment. (Barret v. Coburn, 3 Metcalfe, 510, 515.)

11. Smith-Anderson-Bolinger dicker. (Guthrie v. Guthrie, 25 Ky. Law Rep., 1702; 10 Amer. & Eng. Ency. of Law, 2d Ed., 171, note 5.)

12. Champerty statutes no application to judicial sale nor to possession under executory purchase. (82 Ky., 619, 632-34; 20 Ky. Law Rep., 522-3-4; 85 Ky., 44-6; 5 Ky. Law Rep., 58.)

13. Smith never paid the balance due on the purchase money.

ROBBINS & THOMAS for appellees.

### AUTHORITIES CITED.

1. Until an assignment of dower, there is no kind of estate in favor of the widow in the land in which the right of dower exists, and, consequently, no suspension of the statute of limitation as against the remainderman or the owner in fee. (52 Amer. Dec., 274; Tompkins v. Fonda, 4 Page, 488; Richey v. Putnam, 13 Wend., 526; 59 Amer. Dec., 473; Lawrence v. Miller, 2 N. Y., 254; Gooch v. Atkins, 14 Mass., 378; 5 A. & E. Ency., 1st Ed., 933; Carey v. Buntain, 4 Bibb., 217; Tucker v. Vance, 2 A. K. Mar., star p. 458; 15 B. Mon., 591, at p. 604.)

2. Book entries are not admissible to prove a negative fact. (11 Bush, 7.)

3. Time, although not sufficient to bar the action, raises a pre-

sumption of payment. (Pomeroy's Equity, vol. 1, secs. 418 and 419; 1 Bush, 263; 1 Metcalfe, 519; 24 Ky. Law Rep., 1976; 18 Am. State Reps., 879; 18 A. & E. Ency., 1st Ed., 519.)

4. In actions to remove clouds from title, equity will not encourage laches and aid a stale claim. (11 Ky. Law Rep., 356; 20 Idem, 1670; 21 Idem, 1400; 26 Idem, 774.)

In addition to the above, we desire to cite the following authorities upon the various points in this case: 12 Ky. Law Rep., 547; 11 Idem, 301; 22 Idem, 1030 and 1613; 24 Idem, 1033; 8 Bush, 555; 7 Monroe, 108; 1 Dana, 407; 79 Ky., 499; 88 Amer. State Reps., 707; 18 B. Mon., 113.

W. J. WEBB for appellees.

### QUESTIONS MADE AND AUTHORITIES RELIED UPON.

1. Appellant is not entitled to recover the land in controversy, because he failed to establish his own title thereto. (Green v. Wilson, 8 Ky. Law Rep., 601; Davis v. Justice, 8 Ky. Law Rep., 258; Ratliff v. Elam, 14 Ky. Law Rep., 772; Coleman v. Talbot, 2 Bibb., 130; Colston v. McVay, 1 Mar., 251; Thomas v. Head, 1 Mar., 450; Finley v. Humble, 2 Mar., 571; Smith v. Nowells, 2 Littell, 160.)

2. Appellees establish their title, both of record and adverse possession. (Tucker v. Vance, 2 A. K. Mar., 458; Carney v. Buntain, 4 Bibb., 217; 52 Am. Dec., 274; 59 Am. Dec., 473; 5 Ency. of Law, 933.)

3. Purchase of Bamberger, Bloom & Co. champertous. (Ky. Stats., sec. 210.)

OPINION BY JUDGE O'REAR—Affirming.

These actions were brought by appellants to quiet their title to undivided interests in certain lands in Graves county. In the first-styled suit, the claim of appellants is that they are the owners of an undivided one-fourth in fee and of the remaining three-fourths subject to the dower right therein of C. E. Kemble, in all of the N. W. one-fourth of section fifteen, township four, range 1 E., in Graves county, excepting ten acres thereof, which had been condemned as a town site for the town of Hickory Grove. A large number of persons, in possession of various lots of the boundary claimed, were made defendants

who set up separate claims each to his respective lot. In addition to denying title in appellants, the defendants pleaded the statutes of limitation and champerty. The circuit court decided the case against appellants and dismissed their petition, but upon which of the defenses is not disclosed.

The whole of the N. W. one-fourth of section fifteen, township four, range one E., was owned by J. W. Kemble prior to 1860, and had been in his possession, under such claim, for many years prior thereto—for at least fifteen years prior thereto. He sold and conveyed by deed, in which his wife, C. E. Kemble, joined, an undivided one-fourth of this land to P. H. Stephens about the year 1860. Afterwards he sold to Stephens the remaining three-fourths, but whether he executed a deed for it is not clear; but he either executed a deed, in which his wife did not join, or he executed a bond for title. In either case, the wife, C. E. Kemble, did not relinquish her potential dower in the three-fourths interests last mentioned. It may be as well to say here that all the confusion concerning these titles grows out of the destruction of the deeds when the courthouse and county court clerk's office of Graves county were burned in 1887. All the deed books and records of suits were then destroyed. P. H. Stephens was brother-in-law to J. W. Kemble; Mrs. Kemble being his sister. Stephens then lived with his sister and her husband on an adjoining tract of land owned by them, or by one of them, and used and claimed the land in dispute in this action as his own. Prior to 1870 the town of Hickory Grove was incorporated. It is said that a tract of ten acres of land was condemned for the original town site. Just what these proceedings were is not shown; nor, in view of the lapse of time and adverse holding under them, is it

longer material. The point of interest here is to lo-
cate the ten acres. It is admitted by appellants that
so much of the land, the ten acres, was set apart by
some kind of proceeding in which Stephens and the
Kembles acquiesced, and perhaps participated, so
that those who now hold that plot have the complete
title to it. It will be noticed again later. Stephens
and Tom Albritton were partners in merchandising.
Albritton may have had, as such partner, an interest
also in the land now in dispute. That firm, in 1873,
made a deed of assignment to R. T. Albritton, then
sheriff of Graves county, for the benefit of their
creditors generally. The deed conveyed all the prop-
erty of the assignors, specifying particularly the land
herein mentioned. The assignee attempted to sell
the land at public auction, when Lucien Anderson and
Edward Crossland, being the best bidders, were ac-
cepted as purchasers. They did not complete their
purchase, however, having refused to execute bonds
for the purchase money, on the ground that there
was a defect of the title. Still there was some time
elapsed between the date of their purchase and the
date of its rescission, during which they seem to
have entered into the possession of the land and to
have exercised some kind of authority and proprie-
torship, evidently in anticipation of the completion
of their purchase. Among other things they let
tenants in the possession of part of the land. Later
the trade was rescinded, as stated above. Then the
assignee, R. T. Albritton, filed a suit in the Graves
Circuit Court against the assignors and the creditors
of the assignors, also making C. E. Kemble a party
defendant, to get a decree to sell the lands men-
tioned, as well as other realty claimed to have been
conveyed to the assignee by the deed of assignment.
Mrs. C. E. Kemble contested the title to some of the

land sought to be sold, but not that here involved. The files of that suit were destroyed in the burning of the courthouse but the order book containing some of the steps and the final judgment in the case was not.

The effect of this judgment was to give to Mrs. C. E. Kemble absolutely the title to certain of the lands sought to be subjected by the assignee, situated in township sixteen; but as to the lands now in dispute it adjudged to her dower in three-fourths of it. This dower was not then allotted by metes and bounds, but was adjudged to attach in common upon the undivided interest out of which it was derived, viz., the three-fourths which she had not joined in the conveyance of. The judgment furthermore decreed the sale of the remaining interest in the title, that held by Stephens and Albritton, in satisfaction of their debts. The judgment of sale was executed by the court's commissioner, when Bamberger, Bloom & Co., a mercantile trading copartnership, became the purchasers. Their bid having been approved, the sale was confirmed, and conveyance made to them conforming to the terms of the judgment above set out. The suit by Albritton, Assignee v. Stephens and Albritton, et al., lingered on the docket several years before the final step of making the deed to the purchaser, Bamberger, Bloom & Co., which occurred in fact on November 26, 1881. In the meantime W. M. Smith had bought out the dower claim of Mrs. C. E. Kemble, together with other property not here involved. By some kind of arrangement not made quite clear he let in Anderson & Bolinger to the possession of this land, which he, as vendee of Mrs. Kemble, had the right as tenant in common to hold. Anderson & Bolinger conveyed

same to appellee J. M. Sawyer, and Sawyer has conveyed much of his grant to others.

The first point we will notice is appellee's plea of limitation. This presents, at its threshold, the character of Mrs. C. E. Kemble's title. Her husband is dead. When he died is not shown exactly. But it has been many years ago; P. H. Stephens says as long as twenty years ago. In the absence of the record of the suit destroyed, we must presume that it contained evidence that justified the judgment in favor of the claim of C. E. Kemble, the dowress. This must assume the death of J. W. Kemble prior to the decree. By the terms of the judgment she is adjudged her dower. It also implies her previous claim to unassigned dower as widow of her deceased husband, who had owned an undivided three-fourths in the entire tract. As her husband was not entitled, as owner of the three-fourths, when he owned it, to take possession in his own right of any exclusive part of the common tract, neither could his widow claim to be endowed out of any certain part of it. Her right of dower attached to her husband's interest, and followed it. Whilst it is true that the joint tenants, Kemble and Stephens, might by deed or other appropriate proceeding have partitioned the land between them, so that Kemble's wife would have been confined in her claim to dower to the part assigned to him, yet that was not done. At common law the widow was not entitled to recover possession of the land, out of which she was entitled to dower; nor any part of it, except it be the mansion house and curtilage of her deceased husband, until dower had been assigned to her, which was by writ of right of dower against the tenants of the freehold. After she had judgment settling her dower, she could then recover possession. (Newell, Eject., sec.

15.)   After such a recovery by writ of right at the common law, or by judgment in equity under our modern practice, the widow is the owner of a freehold estate for life in what may have been allotted to her by the judgment as dower, and may take or recover possession of the parcel or interest so allotted. Furthermore, at the common law, the assignment of dower was by metes and bounds. Yet, from the nature of the thing, there are exceptions to the rule. Among them, this is noted: "When from the nature of the husband's interest in the property, there can be no assignment in severalty, an assignment by metes and bounds will be dispensed with, as where the lands out of which the dower is to be assigned are held in common, in which case the dower interest is to be assigned to be held in common with the heir and other tenants." (10 Am. & Eng. Encyc. of Law, 176; Sanders v. McMillian [Ala.], 39 Am. St. Rep., 19, where a comprehensive note by Freeman discusses the question here presented; see also, authorities cited in 14 Cyc., 1002.)

Upon authority and reason we must conclude that Mrs. Kemble, under the judgment decreeing her dower, took an estate of freehold for her life in one-third of the three-fourths undivided of the land described in the judgment. She became thereby a tenant in common with the owner of the other interest, viz., P. H. Stephens' assignee, whose interest and title were acquired through the decretal sale by appellants. Mrs. Kemble's right of entry upon any part of the common boundary was, until partition, equal to that of her co-tenants, appellants. When she entered, her entry inured to their benefit and was amicable to their title. When Mrs. Kemble sold to Smith, he got no more than she had, and took it subject to the same rights and responsibilities. He

bought her dower right only, and took possession necessarily compatible with his title. So long as he held possession it was in no wise different from Mrs. Kemble's. It was not adverse to the co-tenants. Smith having conveyed his interest in this quarter section of 15 to Anderson & Bolinger, they conveyed by deed purporting to convey the fee simple to the whole of the land. Their deeds were made more than 15 years before appellants began this suit. Their grantees took possession immediately, and they and their grantees, down to the present occupants, have continuously claimed the property adversely as their own from that time. More than 15 years of such possession and claim ripens into a title, even as against the former rightful claimant and owner out of possession.

Appellants' contention, however, is that, as Smith was in possession as their joint tenant, his grantees were likewise their joint tenants, whose possession was not adverse in law to their co-tenants. When Smith conveyed, and his grantees in turn conveyed, each purporting to convey the whole title, their act was an open repudiation of the joint tenancy. Their vendees took not only what Smith had in fact to convey, but took possession consistent with the title which was imported by their deeds, which was exclusive of every other claim. From that moment their possession became hostile to appellants, who had then a cause of action. Appellants contend that, so long as Mrs. Kemble was alive (and she was living at the trial of this suit), they could not maintain ejectment against her vendees, as they occupied her place as tenant in common with appellants. While there is some contrariety among the authorities as to whether an entry of a person under a conveyance which purports to dispose of the whole, although

the grantor is but a joint tenant in the title, is an entry of the whole in severalty, or takes only the title of his immediate grantor, the decided weight of authority is to the effect that such grantee enters, claiming the whole to himself. Among the numerous cases sustaining this doctrine are Gill v. Fauntleroy's Heirs, 8 B. Mon., 186; Gilaspie v. Osburn, 3 A. K. Marsh., 77, 13 Am. Dec., 136.

In the case of Prescott v. Nevers, 4 Mason, 330, Federal Case No. 11,390, Judge Story, said: ''I take the principle of law to be clear that, where a person enters into land under a claim of title thereto by a recorded deed, his entry and possession are referred to such title, and that he is deemed to have a seisin of the land co-extensive with the boundaries stated in his deed, where there is no open adverse possession of the land so described in any other person.''

In Pennsylvania it was held (Culler v. Motzer, 13 Serg. & R., 358, 15 Am. Dec., 604) that the possession of land by a purchaser ''under a deed of an entire lot is adverse to the rightful owner, though tenant in common with the grantor.'' ''The sale in such case, of the whole tract,'' says the court in Law v Patterson, 1 Watts & S., 191, ''is in effect such assertion of claim to the whole as can not be mistaken, because it is wholly incompatible with an admission that the other tenant in common has any right whatever.''

Appellant concedes the general application of this doctrine, but contends that it applies only where the co-tenant, purporting to sell and convey the whole tract, conveys by deed of general warranty. In the case at bar the conveyances were frequently without warranty. Freeman on Co-tenancy and Partition declares that, if the grantor's deed contains

a covenant of general warranty against the claims of all persons, no room is left for doubt that the grantor intended to deal with the lands as his individual estate. But the authority adds that a conveyance, giving no indication respecting the nature or amount of title with which the parties thought to be dealing, may perhaps be less persuasive evidence than the nonconveying co-tenants had notice of the adverse entry of the grantee therein. We are unable to perceive why a deed, though without warranty, which purports to convey the whole title to the land, is not as effectual to put rightful claimants upon notice of the nature of the conveyance and holding thereunder as if the deed had contained words of warranty. The conveyance is absolute in terms, purports to convey the fee-simple title, and necessarily excludes all idea of conveying a moiety or a less interest therein. We conclude that the deeds and the possession thereunder in this case are sufficient to set the statute of limitation in motion in favor of the co-tenants, appellants. One co-tenant may actually oust another, as he may do, the latter not having the actual possession, by a deed conveying the whole to a stranger. The ousted co-tenant may sustain an action of trespass against his fellow co-tenant or his grantee to recover the damages occasioned by the ouster, or, under our practice, may maintain his bill in an action of quia timet. (Secs. 242, 301, Freeman on Co-tenancy and Partition.)

This case is divisible again into another branch, which involves a different and additional question to that which has just been discussed. Appellee J. M. Sawyer in 1888 took a deed for certain designated lots in the town of Hickory Grove from L. Anderson and wife. Anderson quitclaimed his interest only in

the lots which he described as being the one-half interest of R. K. Williams therein. How Williams acquired the title is not shown. It is not claimed for appellants that Williams ever owned any joint interest with Stephens or that he acquired any joint interest with them. Whatever Williams' claim was, so far as this record discloses, it was hostile to appellants' claim. Although Sawyer may not have acquired a perfect title, or, indeed, any title, by Williams' conveyance, still he took possession under it. Indeed, he took possession under the purchase from Anderson some six years before; but the deed first executed by Anderson was destroyed in the burning of the courthouse in 1887, and the deed of 1888 was made by way of substitution. Admitting that Sawyer took only a moiety in the lots described in Anderson's deed, whoever owned the other moiety of the same title was Sawyer's co-tenant. This was not appellants, nor do they claim that it was. In that case Sawyer's possession was for himself and his co-tenant, whoever it may have been, and was adverse to the title and claim of appellants. By the lapse of time appellants' right of entry was tolled, and is a bar to their suit to recover the possession.

Another difficulty concerning these lots just being discussed is that from an inspection of the plat of the town filed in the record we are unable to determine, and doubtless the circuit court was also, whether or not they were within the original 10 acres condemned for the town of Hickory Grove. They, or at least the most of them, appear to have been within that town. The truth is the 10 acres have not been located satisfactorily by the evidence. It is altogether likely that the original town site embraces all of the town lots conveyed by this deed. But whether it does or not is a problem about which the court can not spec-

ulate, so as to render a judgment in a suit of one out of possession against one in possession, and who has shown himself to have been in hostile possession for more than 15 years.

The case of William Skaggs is similar to that against J. M. Sawyer up to the point that W. M. Smith, in addition to buying out the interest of Mrs. Kemble, also contracted with appellants to buy their interest, and paid them part of the purchase price for it, but did not take a deed of conveyance. After-ward Smith conveyed to another and let him in pos-session, whose title in turn has been conveyed to ap-pellee Skaggs. Skaggs has paid in full for the land, and has been holding it, together with his immediate grantor, for more than 15 years before the beginning of this suit. Appellants changed their suit by an amendment of their pleading, so as to seek a recov-ery of the balance of the purchase money contracted to be paid by Smith. Appellee Skaggs interposed the plea of limitation. The rule is that, so long as, the vendee of an executory contract for the sale of land looks to his vendor for title, he can not rely upon the statute of limitation as a bar to a suit to recover the balance of the purchase money. But if such vendee is not looking to his grantor for title, relying, instead, upon his adverse possession for a time equal to or longer than the statutory period, he may do so. Whereupon the plea of statute against the enforcement of the purchase money lien is allowed. (Bargo v. Bargo 27 Ky. Law Rep., 680, 86 S. W., 525; Bright v. L. & N. R. R. Co., 27 Ky. Law Rep., 1052, 87 S. W., 781.)

We are unable to see, from this record, that any error has been committed prejudicial to the substan-tial rights of appellants, and the judgments in both cases are affirmed.