# DECISIONS

OF THE

# Court of Appeals of Kentucky

## SPRING TERM, 1913

### Wilson v. Hoover, et al.

(Decided May 22, 1913.)

## Appeal from Ohio Circuit Court.

1. Deeds—Construction—Distinct Interests or Titles.—A deed, purporting to convey the undivided interest of the grantor in and to the lands therein described, passes all interest of every character, then owned or claimed by the grantor, in said lands.

2. Adverse Possession—Tenancy in Common—Limitation of Actions.—As a general rule, the possession of one cotenant is amicable and not adverse to that of another cotenant, but such possession may be adverse and, if continued uninterruptedly for fifteen years, will ripen into a perfect title.

3. Limitation of Actions—Adverse Possession—Notice—Tenancy In Common.—To set the statute of limitations in motion in favor of one cotenant against another, actual notice of adverse holding, or such open and notorious claim of ownership or exercise of such claim of right as to justify the inference of adverse possession, must be brought home to the disseized cotenant.

4. Partition—Action—Evidence—Weight and Sufficiency—Limitation of Actions—Adverse Possession—Tenancy In Common.—In an action for the partition of lands by a vendee of a cotenant against other cotenants, or those holding under them, evidence held sufficient to suport the pleas of adverse possession and limitation of actions.

SWEENEY, ELLIS & SWEENEY for appellant.

BARNES & SMITH for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Dan. T. Wilson filed suit in the Ohio Circuit Court against L. S. Hoover and others, in which he sought to

be adjudged the owner of an undivided twenty-one, one-hundredths interest in 214 acres of land in said county. He alleged that the defendants owned seventy-nine one-hundredths remainder interest in said land, and prayed for its partition, or a sale and division of the proceeds if it should be found not to be susceptible of division. The defendants filed their separate answers, in which they each asserted title to a portion of the land described in the petition and denied that the plaintiff had any title to or interest in the portions so claimed by them. The defendants conceded that plaintiff owned a tract of about twelve acres, which was described in the boundary set up by him in his petition. They pleaded further that, on November 21, 1890, the entire boundary described in the petition was claimed by and in the possession of L. S. Hoover and wife, J. R. St. Clair and E. D. Ford; that on said date they caused it to be surveyed, and partitioned it among themselves, Hoover and wife taking 53 acres, St. Clair 80 acres, and Ford 12 acres; that they each then and there acquiesced in said division; that Hoover and wife, who were then on the land allotted to them, put it under fence and have ever since been continuously in possession of their part; that St. Clair was likewise possessed of his portion, having fenced and held it in uninterrupted possession until 1892, when he sold it to J. H. Wilson, who took immediate possession, and he and his vendees have ever since been in the undisputed possession of all of said 80 acres; and that said E. D. Ford sold the twelve acres so allotted to him to Z. A. Wilson, a son of plaintiff, and that later Z. A. Wilson sold and transferred it to his father, who now owns it. The case was prepared for trial on the question of title and, upon consideration, the chancellor was of opinion that the plaintiff was not entitled to the relief sought and dismissed his petition. He appeals.

The pleadings are quite voluminous, and the issue is very much complicated by the injection into the record of much irrelevant and redundant matter. This land was a part of a tract of 262 acres owned by Robert Wilson. In his lifetime, he sold off forty acres, and in 1870 died the owner of the remaining 214 acres. He left a will by which he gave his widow a life estate in all of said land during her widowhood, with remainder to ten of his thirteen children, naming them. His widow never married again, and died in March, 1894. A few years before her death, she sold a life interest in a part of

said land to L. S. Hoover, and later, either sold the balance to J. R. St. Clair or placed him in possession of it under an agreement by which he was to provide her a support during the remainder of her life. A year or so before her death, she moved away from the farm and never thereafter lived upon it.

Several of the Wilson children, to whom their father devised a remainder interest in the farm, sold their undivided interest to their brother James, and the record is reasonably clear that, in this way, he acquired a five-tenths interest in said land. He owned, by devise, a one-tenth interest, so that he owned at least six-tenths of said land. He sold and conveyed his interest to Joseph Ford. Ford, it appears, purchased another interest, giving him at least seven-tenths of the entire tract. Two of the other Wilson children sold their interest to one Job S. Arnold, and Arnold sold these interests, so acquired by him, to appellant, Dan T. Wilson, describing the land covered by his conveyance as his undivided interest in the Robert Wilson farm. In 1879, Joseph Ford conveyed to his children, ten in number, all of his interest in the Robert Wilson lands, but did not describe in the deed the extent of such interest. There is no record evidence that Catherine Wilson ever disposed of her one-tenth interest in her father's estate. She married one Golson Phelps, by whom she had two children, J. R. Phelps and Zelma Phelps who married one George M. Tucker. She died in 1910 without ever having asserted her right to this property, although she lived more than forty years after the probate of her father's will devising it to her. There was no dispute between the parties to this litigation, at the time the petition was filed, as to the interest of any of the Wilson heirs in or to said land, for at that time appellant, Dan T. Wilson was not claiming any interest through, or by virtue of, any purchase from any one of the Wilson heirs. On March 10, 1911, he purchased from Zelma Tucker and her husband an undivided one-half interest in one-tenth of said land, which her mother, Catherine Wilson Phelps, should have received in the division of her father's estate. After his purchase of this undivided one-half of one-tenth he filed an amended petition asserting claim to this interest. J. R. Phelps who was made a defendant answered claiming an undivided one-half of one-tenth interest in the Robert Wilson land, as heir-at-law of his mother, Catherine Wilson Phelps; he

made his answer a cross-petition against his co-defendants and joined in the prayer of the petition. Appellees took issue with him on the question of his claim of ownership and, upon final hearing, his answer and cross-petition was dismissed. As he has prosecuted no appeal, it is unnecessary to notice further this branch of the case.

Each of the Ford children owned an undivided one-tenth of seven-tenths, or seven one-hundredths of the Robert Wilson tract. Appellant claimed, in his original petition, the interest of N. H. Ford, Lucinda Myers and E. D. Ford, twenty-one one hundredths in all. Appellees conceded that he owned the E. D. Ford interest, but asserted that it was not an undivided interest, but that, in the division made in 1890, his interest had been cut off and allotted to him, and the deed, under which appellant asserts title to this interest calls, not for an undivided interest but for twelve acres and this twelve acres is described by metes and bounds; hence, the only controversy is over the N. H. Ford and Lucinda Myers interests.

Appellant claims that on March 5, 1888, he caused the undivided interest of N. H. Ford in the Wilson and other lands which he had inherited from his father, to be sold under execution in satisfaction of a judgment debt, and that he, at said sale, became the purchaser of the interest of N. H. Ford in the Wilson land. He took no further steps to invest himself with title to this interest until 1910, when, on September 13, he caused the sheriff of Ohio county to make a deed to him for said interest, under and by virtue of his purchase. Appellee, Hoover, insists that, at the time of said sale, he forbade the sale of the land, claiming that he had theretofore purchased it of N. H. Ford and was then in possession of same. The conduct of appellant rather confirms the claim of appellee, Hoover, for, while admitting that he knew that Hoover was, during all this time, living upon and claiming the land, appellant took no steps, for more than twenty years, to invest himself with paper evidence of title to the property. We are not limited, however, in determining appellant's rights in this particular, to a consideration of the claim of appellee, Hoover, and this defense may be waived, for, upon examining the record, we find that the sheriff's sale, under which appellant claims to have acquired title to the interest of N. H. Ford in this land, was made on March 5, 1888, and on February 2, 1889, he sold and

conveyed to his son-in-law, J. R. St. Clair, his undivided interest in the Robert Wilson land. He insists that, by this conveyance, there passed to his son-in-law only that interest for which he then had paper title. The deed does not so state. It calls for his undivided interest, and undoubtedly passed all interest of every kind and character, which the grantor then owned or claimed in the land described in the deed. If there was any mistake in the execution of this deed or fraud in its procurement, appellant had five years from the discovery of the mistake or fraud, or at most, ten years from the date of the execution of the deed, to have it corrected. The time within which he might have availed him of such right, if any he had, having long since passed, such plea would now be of no avail. Evidently this claim on the part of appellant to the interest of N. H. Ford is the result of an afterthought and is wholly without merit.

Appellant's claim to the Meyers tract arose in this way: He alleges that his son-in-law, J. R. St. Clair, bought the Myers interest in September, 1889, and thereafter sold and transferred it to him by assignment, and he procured a deed for this tract on June 12, 1911, after the institution of this suit. This claim occupies very much the same position as does his claim to ownership of the N. H. Ford tract, for St. Clair in 1892, two years after the division of the land between himself, Hoover, and E. D. Ford, sold and conveyed his interest in the Robert Wilson land to J. H. Wilson, who was the oldest son of Dan., and J. H. Wilson took possession under this conveyance and he and those claiming under him have held it ever since. Now, if it be conceded that St. Clair did, in fact, buy the Myers interest, it was evidently taken into account at the time of the division, and when he sold his interest in the Robert Wilson land, this Myers interest passed under his deed, and his father-in-law acquired nothing by reason of the assignment and transfer of the title bond to him many years after St. Clair had parted with any interest that he had in this land. The record, which appellant, his son, and son-in-law made at a time when there was no question of ownership involved, is a complete bar to the claim attempted to be asserted here on the part of appellant to the interest of N. H. Ford and Lucinda Myers in the Robert Wilson farm.

The only question giving us any concern is whether or not limitation had run against Catherine Wilson

Phelps, depriving her of her interest in the Robert Wilson farm. A determination of this question depends upon whether or not the possession of the occupying claimants, although cotenants with her, was adverse to her. As a general rule, the possession of one cotenant is amicable and not adverse to that of another cotenant. But, there are many exceptions to this rule, and it is well recognized in this State and elsewhere that the possession of a cotenant may be adverse or hostile to other cotenants and, if continued for fifteen years or more, will ripen into a perfect title. The exception to this rule is stated by the author in 1 Cyc. 1072, as follows:

"While the general rule is as stated, it is well settled that one tenant may hold adversely to his co-tenant, and if his possession is continued uninterruptedly for the statutory period he will acquire an indefeasible title; and this is true whether the original entry was with intent to hold adversely or whether the entry was as tenant in common."

Gillaspie v. Osburn, 3 A. K. Marsh., 77 and Larman v. Huey, 13 B. Mon., 436 are cited by the author in support of the text.

As to the necessity of knowledge or notice of the fact of adverse holding, the same author, in 1 Cyc., 1073, citing in support of the text Gossam v. Donaldson, 18 B. Mon., 230, and Ward v. Ward, 15 Rep., 706, 25 S. W., 112, says:

"In order to constitute a disseizin of a cotenant the fact of adverse holding must be brought home to him either by information to that effect, given by the tenant in common asserting the adverse right, or there must be outward acts of exclusive ownership of such a nature as to give notice to the cotenant that an adverse possession and disseizin are intended to be asserted. Actual verbal or written notice is not, however, necessary; adverse possession may be inferred from outward acts, open and notorious claim of ownersip, and exercise of exclusive right." * * *

In Bloom v. Sawyer 121 Ky., 308, an owner of an undivided three-fourths of a tract of land died, leaving a widow to whom dower was set apart. The widow conveyed her dower right to one who conveyed it to another, and he conveyed by deed, without warranty, the whole tract in fee simple. The grantee in the latter deed took possession of the whole tract and continuously claimed the property adversely as his own. The court there

held that the entry of a person on land under a conveyance which purports to dispose of the whole, though the grantor is but a joint tenant, is an entry of the whole in severalty and is adverse to the other tenants, and possession under such deed was sufficient to set the statute of limitation in motion against the cotenants.

There is no question that, at the time this land was divided in 1890, Hoover, St. Clair, and E. D. Ford were in possession and claiming all of it, and there is no evidence whatever to the effect that, at that time, any of them knew that Catherine Wilson Phelps owned an interest in this land. So that, at the time the division was made, it is undoubtedly true that they were claiming this land, whether they, in fact, owned it or not. It is likewise true that, under such claim of ownership, they proceeded to and did divide and partition it among themselves, causing it to be surveyed and each exercising such acts of ownership as one might exercise over land belonging to him. With the exception of E. D. Ford, they built upon it, cultivated it, cut timber from it, paid the taxes on it, and publicly and openly claimed as their own, and it was recognized as such by persons living in that community.

Were these acts on the part of appellees, and their predecessors in title, sufficient to put Catherine Wilson Phelps upon notice that their claim was hostile to hers? We are of opinion that they were. Appellees' possession was certainly as notorious and open as it could have been made, without giving to Catherine Wilson Phelps actual notice that they were claiming the land and were not recognizing her right to an interest in it. As a matter of fact, there is no evidence whatever that she, at any time, asserted or claimed to have such right, and her conduct leads rather to the conclusion that, at some time during the twenty years following the probate of her father's will and the division of this land, she had sold or disposed of her interest therein. Having lived in that vicinity and being of sound mind, her conduct is difficult of explanation upon any other theory, but whether she had sold it or not, we are of opinion that the conduct of appellees is such as must have apprised a person of ordinary intelligence that they were not recognizing the right or title of any one else in and to those portions of the land in controversy, which were held by them. This being true, we would hold that, were the claim of ownership now being asserted by Catherine

Wilson Phelps instead of appellant and her son, she had lost it by reason of the lapse of time. Her children could acquire no greater right than she had, and on the state of the record the chancellor was justified in holding that appellant had failed to make out a case.

Judgment affirmed.