## McCoy, et al. v. Thompson.

(Decided December 15, 1916.)

### Appeal from Pike Circuit Court.

1. **Adverse Possession—Holding by Against Commonwealth.**—The right that the Commonwealth may have in vacant and unappropriated land to issue a patent therefor will be divested by such adverse holding of such land as would toll the right of entry of an individual having the title and constructive possession.

2. **Adverse Possession—Limitation Against the Commonwealth.**— Under section 2523 of the Kentucky Statutes limitation runs against the Commonwealth in the same manner as it runs against an individual, and the title of the Commonwealth to land undisposed of by it is the same as the title of a patentee followed by constructive possession only. The statute begins to run against the Commonwealth at the same time that it would begin to run against an individual, and the acts necessary to start and keep the statute in motion against an individual are necessary to start and keep it in motion against the Commonwealth.

3. **Adverse Possession—Owner in Actual Possession of Land to Which He Has Title—When Can Claim Land Outside of His Title by Adverse Possession.**—A person who resides on land to which he has a good title cannot hold under the law of adverse possession land outside of that to which he has a good title without making an actual entry on the land outside of his title and remaining in the actual possession of it for such length of time as would give him the right to hold it by adverse possession.

4. **Adverse Possession—Elements of.**—To constitute adverse possession there must be such open and notorious acts of physical pos-

session as would put the owner of the land upon notice that a hostile claim is asserted to his title. The surveying and marking of a boundary, the payment of taxes, as well as occasional entries for the purpose of cutting timber or for other temporary uses, are incidents of adverse possession, but neither one nor all are sufficient in themselves to constitute adverse holding so as to defeat the title of the true owner.

W. K. STEELE and J. S. CLINE for appellants.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This is a suit in ejectment brought by Thompson, the appellee, against the appellants, the McCoys.

In the answer and counterclaim of the McCoys they set up title to a small parcel of land described in the petition, describing in their pleading the part they claimed, and this litigation involves only this parcel of land.

Thompson asserts his title to the land in dispute under his purchase from Mrs. Charles and her children of dower land allotted to Mrs. Charles in the division of her husband's estate. He contends that the land in controversy was part of this dower land, and that he and his vendors have had it in adverse possession for more than fifteen years, but does not rely on a paper title, resting his claim of ownership on adverse possession.

The McCoys in 1913 obtained a patent to a body of land adjoining this dower land on a survey made in 1912, and they claim the land in dispute under this patent.

The lower court to whom the case was submitted found that Thompson and his vendors had been in the adverse possession of the land in dispute for more than fifteen years before the institution of the action and adjudged the land to him. It further cancelled the McCoy patent in so far as it conflicted with the boundary of the land allotted to Mrs. Charles as dower, which is the land now owned by Thompson. From this judgment the McCoys prosecute this appeal.

It appears that in 1899 Hatcher and Ferrell conveyed to H. G. Charles a tract of land, describing it in the deed in a general way, but not by metes or bounds, or courses or distances, and it cannot be told whether this

land in dispute is included within this boundary or not. But we may say that it is not within that boundary, because Thompson does not claim the land under any paper title.

In 1895 after the death of Charles there was set apart to his widow as dower a tract of land containing 128 acres. The land set apart to the widow was described in the report of the surveyor by metes and bounds and courses and distances and presumably was the land embraced in the deed by Hatcher and Ferrell to H. G. Charles, the husband of Mrs. Charles, but the deed made to Mrs. Charles in this proceeding setting apart to her the dower is not in the record.

In 1902 Mrs. Charles and her children, at least some of them, conveyed to Thompson all of the land set apart to Mrs. Charles as dower, but in this deed the land conveyed is not described by metes or bounds or courses or distances. Thompson, however, as we have stated, does not assert title to the land in dispute under the deeds from Hatcher and Ferrell to Charles or from Mrs. Charles and her children to him. It is, therefore, evident that the land in dispute lies outside of the boundary covered by these deeds, and the surveyor appointed by the court testifies that he did not find any title paper that covered the land in dispute. So that when the McCoys, in 1913, obtained from the Commonwealth the patent through which they derive title, the boundaries of this patent did not intrude upon any land that lay within the boundaries of any previous patent or deed, and there is no claim now on the part of Thompson that the boundary of the patent encroaches upon the lines of the deed made to him by Mrs. Charles.

It will thus be seen that the land in dispute, at the time the McCoys obtained the patent that embraced it, was vacant, unappropriated land, subject to patent, unless it had been in the adverse possession of Thompson and his vendors for more than fifteen years before the patent was issued. If it was, then this adverse holding would defeat the right of the Commonwealth to pass title to it, because the right that the Commonwealth may have in vacant and unappropriated land to issue a patent therefor will be divested by such adverse holding of such land as would toll the right of entry of an individual having title and constructive possession. Or, to state it in another way, the patentee cannot under his patent derive title to land that has been in the adverse

possession of another person for more than fifteen years before the issual of the patent if the adverse holding was of such nature and continued for such length of time as would defeat the right of an individual in the constructive possession of the patented land to recover it from the adverse holder.

Thus it was held in Whitley County Land Company v. Power's Heirs, 146 Ky. 801, following other cases therein referred to, that "as the statute in section 2523 provides that limitation shall run against the Commonwealth in the same manner that it runs against an individual, we think the title of the Commonwealth to land undisposed of by it should be treated in the same manner as the title of a patentee followed by constructive possession only, and that it logically and necessarily follows that the title and right of entry on the part of the Commonwealth can only be divested or defeated by the same kind of adverse possession that the title and right of entry of a patentee holding by constructive possession could be divested and defeated. The statute of limitation begins to run against the Commonwealth at the same time that it would begin to run against an individual. The acts necessary to start and keep the statute in motion against an individual are necessary to start and keep it in motion against the Commonwealth. No reason can be assigned why any distinction should be made between the Commonwealth and an individual."

It will thus be seen that the real and controlling question in this case is whether Thompson and his vendors had for fifteen years or more prior to 1913 such adverse possession of this land in dispute as would defeat the constructive title and possession of the Commonwealth, and consequently defeat the title of the McCoys, to whom the Commonwealth conveyed by patent this land in 1913.

It is conceded that there were never any improvements in the way of buildings put on this land in dispute, and it is also very clear that it was never in the actual possession of any person, except perhaps occasionally, by enclosure or cultivation, although there is some evidence that a good many years ago it was enclosed for a time with the dower land by the fence that enclosed this land. But this enclosure was only for a short time. There is also some evidence tending to show that some trees were marked on the exterior lines of the dower land and that this marked boundary enclosed this

land in dispute with the dower land, but the evidence as to this marked line is not satisfactory, nor are the other incidents upon which it is sought to rest the claim of adverse holding, when taken together and in connection with this marked line, sufficient to satisfy the demands of the law of adverse possession which requires an actual entry and an actual physical holding and possession for fifteen years. Merely marking a boundary and claiming to it is not enough.

We, therefore, think it may safely be said that there was no such actual possession of it as would defeat the constructive possession of the Commonwealth up to the time it conveyed the land to the McCoys by the patent, or their constructive possession thereafter, unless it can be said that Thompson and his vendors were put in the adverse possession of this land in dispute by reason of the fact that they had, as the evidence shows, actual possession of the adjoining land conveyed by Hatcher and Ferrell to Charles and by their claim of adverse ownership and holding of this land in dispute that lies outside the boundary of the deeds under which Charles and Thompson held. But it has been repeatedly held that a person who resides on land to which he has a good title cannot hold under the law of adverse possession land outside of that to which he has good title without making an actual entry on the land outside of his title and remaining in the actual possession of it for such length of time as would give him the right to hold it by adverse possession.

Thus it was said in the Whitley County Land Company case and many other cases referred to in the late case of Brewer v. War Fork Land Company, 172 Ky. 589, that: "The mere fact that the tract to which he had a good title adjoined it, will not be allowed to increase his right of ownership. Ownership of land in this State, so far as we are advised, can only be obtained in two ways—one, by what is called a paper title tracing back to the Commonwealth, and the other, by adverse possession. And adverse possession can not be sustained by proximity or intentions. It can only rest on physical acts—such as will give to the real owner of the land notice that some other person is in possession of it. In short, to constitute adverse possession there must be such open and notorious acts of physical possession as would put the owner of the land—assuming him to be a person of ordinary prudence and dili-

gence in looking after his estate—upon notice that a hostile claim was asserted to his property. And this character of claim and possession must be continued for fifteen years or more, to a well defined boundary. The surveying and marking of a boundary, the payment of taxes, as well as occasional entries for the purpose of cutting timber or other temporary uses, are incidents of adverse possession, but neither one nor all are sufficient in themselves to constitute adverse holding so as to defeat the title and possession of the true owner. It is not necessary that actual notice of the adverse holding should be brought to the attention of the owner. It will be sufficient if the acts of the adverse claimant are of such an open and visible and notorious character as would put the owner upon notice that a hostile claim was asserted.''

And as neither Thompson nor his vendors ever had such actual adverse possession of the land in dispute, it follows that the lower court should have adjudged the McCoys to be the owners of and entitled to the possession of the land under their patent.

Wherefore, the judgment is reversed, with directions to dismiss the petition and enter a judgment on the counterclaim of the McCoys, adjudging them entitled to the land.