## Moore et al. v. Pauley et al.

(Decided June 23, 1933.)

W. R. McCOY for appellants.
J. B. CLARK for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This action was originally instituted in equity in the Martin county court, seeking a partition of a tract of land of about 162 acres, situated on Pigeon Roost fork of Wolfe creek, Martin county, Ky., in which plaintiff Wesley Moore claimed to be the owner of an undivided one-half interest therein and the defendant Lora Pauley the owner of the other one-half interest.

The appellee Lora Pauley (defendant below), filed her answer and counterclaim, in which she denied that appellant Wesley Moore (plaintiff below) was the owner of a one-half interest in the tract in controversy, and asserted her title to the entire tract of land described in the petition, and entered motion, which was sustained, to transfer the case to the Martin circuit court, and on March 16, 1925, the record was therein filed.

On March 22, 1926, the defendant Lora Pauley died.

A petition for revivor was filed against her heirs, now the appellees, and an order of revivor made thereon in October, 1930.

In February, 1927, the appellant Wesley Moore filed an amended petition, charging the appellee Lacy Pauley with committing waste upon the land and for rent for use of his interest and share of coal mined, to which the appellees in April, 1931, filed answer and counterclaim, denying these allegations and the plaintiff's right to maintain said action, and setting up title to the entire tract of land sought to be divided in the proceeding, and further pleading that they and those under whom they claimed had been in the adverse possession, control, and ownership of the land for more than fifteen years, and pleaded the statute of limitations as a bar to the plaintiff's cause of action, and further pleaded that the plaintiff's deed from William Pauley conveying him the land in question was taken at a time when the appellees and those under whom they claimed were residing on, had possession of, and exercised entire and exclusive control over all the property described in the petition, and had been so holding the land for a period of more than fifteen years, which fact was well known to the plaintiff, and that, by reason thereof, the plaintiff's deed for the claimed one-half interest in said property secured from William Pauley was champertous and void, and pleaded and relied upon the statute of champerty as a complete defense to the plaintiff's cause of action.

An agreed order was entered traversing the affirmative allegations of all pleadings not otherwise controverted by pleading.

Proof was taken upon the issues joined, when the trial court, upon final hearing, dismissed appellant's petition and adjudged the appellees to be the owners of the entire tract of land, described in the petition. To reverse this judgment, this appeal is prosecuted.

According to the evidence before us by the record, appellant's claim of being the owner of a one-half interest in the land described in his petition is based upon the original deed from Thomas Pauley to William Pauley, and wife, the defendant Lora Pauley of date November 11, 1899, and the further deed of William Pauley and second wife to appellant Wesley Moore, bearing date of January 1, 1925.

About three years before the purchase by appellant of the land described in the petition from William Pauley, the latter had separated from his then wife, Lora Pauley, and at the time of his abandoning his home and family had turned over and given to his wife, the appellee, all his joint interest and rights which he had, in this property jointly conveyed them, and placed her in the full possession and control thereof and had then moved off and away from the property, going elsewhere to live, and, upon his later securing a divorce about a year thereafter, had remarried.

In January, 1925, or some three years after the separation of William Pauley and Lora Pauley, and after his divorce and remarriage, the appellant Wesley Moore went to William Pauley and negotiated the purchase and conveyance of the entire tract of land in controversy by the said William Pauley to him. However, it sufficiently appears from the testimony of the said William Pauley that at the time of executing his deed to the appellant for this land, which, as stated, had been jointly deed by his father, Thomas Pauley, to him and Lora Pauley, he advised the appellant Moore that he (Pauley) had no land, and that he (Moore) knew how the place had been deeded, and that he could not buy it. When Moore had replied, "I know what I am doing and I will buy it and you are a fool if you don't sell it, the way they treated you." Pauley, continuing his testimony, said, "So, he knocked up a trade and I sold him my interest in the place, if I had any." Further, he testified that, when he and his wife separated, they had been for some time getting along a little bad, and "we got Squire Jewell to have a trial there—it seemed like we was not getting along good, and I didn't think they was treating me right and I told her to go back home and take everything there and she could have it and pay off a note I owed Lem Stanley, * * * and she could have it all, and I went off and never went back to stay." Further, he testified that at the time he deeded the place to Moore, that Moore knew that his wife and children were living on the place. It appears that Moore was their neighbor and adjoining landowner during all the time mentioned in the petition, and was well advised of the domestic differences and estrangement of the Pauleys and their resulting action in separating in 1922 or 1923, and of Pauley's gift to her of his joint interest in their farm,

and the subsequent exclusive occupation, use, and control of the farm by his wife, Lora Pauley, and her children.

Lora Pauley further pleaded that this land was deeded by William Pauley's father to them in 1899, and that she paid from her own means, inherited from her father, the full purchase price of the place, with the understanding that the deed was to be made to her therefor, but that in some way, or through mistake, William Pauley's name was included in it as a joint grantee, and that thereafter she erected, at her own expense, out of her own means, all the improvements upon the property, its barns, buildings, and fences, and also had the entire management and control of the place.

These facts as testified to by William Pauley are in good part corroborated by the testimony of the appellees.

The evidence for the plaintiff, on the other hand, is that he did not know at the time of taking the deed from Pauley that his ex-wife, Lora, was claiming the property entirely as her own or was claiming it under a parol gift to her by her husband of his interest therein. Other witnesses for appellant testified to the effect that in their conversations with Lora Pauley she claimed to have only a one-half interest in the farm.

The learned chancellor, upon submission of the cause for judgment, adjudged that the plaintiff's petition be dismissed, and that the defendants (appellees) are the owners of the property described in their answer and counterclaim, and that their title to the same be quieted.

Appellant complains of this judgment upon the grounds: (1) That the evidence in this case conclusively shows that the appellant and appellees were joint tenants of the land in controversy; and (2) that the rule, in such case is that, ''the possession of one joint owner inures to the benefit of all joint owners and such possession only becomes adverse to the other joint owner by denial of their right or some overt acts or declaration as were reasonably calculated to bring notice to an ordinarily prudent person that their cotenant was claiming against them.''

We have no quarrel with this statement of the rule, but we are of the opinion that the facts of this case, as here found upon conflicting though ample evidence by the chancellor, do not bring the question here presented

upon appeal within the operation of that rule, for the reason that it appears that the admitted sole use and exclusive possession of the land was then held by Lora Pauley, even if she was previously only a joint tenant of the land in question with her husband, William Pauley, as her possession became adverse to him from and after the time of their separation in 1922 or 1923, when it sufficiently appears that he then surrendered or gave to her, or told her to take and hold solely as her own whatever property or joint interest he had in this home place in consideration of her taking over the care and rearing of their children upon the farm and her payment of a small debt then owing by him. It is undisputed that she at such time, and in acceptance of his offer and gift, thereupon took over the entire and exclusive possession, ownership, and control of the farm, with all its rents and profits, which she continued to hold and adversely possess until her death, when the same was continued by their children surviving her, the appellees herein.

It is only reasonable to infer from these facts, as herein testified to, that as the appellant was the neighbor and adjoining farm owner of these parties during all this time of the Pauley's domestic differences and quarrels, that he was also well advised of the matter of their later separation and William Pauley's gift and surrender of his interest in the place to his wife, for a home upon which to rear and support their children, and her acceptance of his interest and of her subsequent adverse holding of the place under such agreement, as they were all neighborhood matters of current happening, with which he was familiar, as was also to be inferred from Moore's statement that "he knew what he was doing" when buying the farm from Pauley; therefore the appellees herein contend that the evidence conclusively shows that, at the time of the execution of the deed by William Pauley to the appellant, that Lora Pauley was then in the open, notorious, and adverse possession of the land in question, exercising ownership over it and claiming it to the full extent of its boundary, and that her possession was thus of such kind and character from the time of Pauley's gift and surrender of his interest in the place to her as would have ripened into a perfect title, if permitted to continue for the statutory period. Therefore appellees contend that appellant's deed secured from William Pauley to this land, which

he himself had previously given outright to his wife, and was then adversely held by her, was, under section 210 of the statutes, champertous and void.

We are of the opinion that this claim and plea is meritorious, and that the evidence supporting such contention was amply sufficient to sustain the judgment of the chancellor in so holding.

It is admitted that the general rule as to what constitutes adverse possession between cotenants is as stated in the text of 7 R. C. L. sec. 40, p. 844, that:

"When a cotenant claiming as such enters on the common land he is exercising a right which his title gives him; and his resulting possession is presumed to be consistent with his assumed title, and therefore to be the possession of his cotenants and himself. * * * But the doctrine has been long since held, and the authorities sustain it, that one tenant in common may so enter and hold as to render the entry and possession adverse, and amount to an ouster of a cotenant. (Greenhill v. Biggs, 85 Ky. 155, 2 S. W. 774, 8 Ky. Law Rep. 825, 7 Am. St. Rep. 579, foot note citation.) And so, where once it appears that the party occupying the premises holds not in recognition of, but in hostility to, the rights of his cotenants, his possession ceases to amount to constructive possession by them, becomes adverse, and if maintained for the period provided for by the statute of limitations, will vest in the possessor a sole title by adverse possession to the premises."

Further, in the same text, section 42, it is said:

"While a physical ouster, or 'turning out by the heels,' * * * is not necessary in establishing title in a tenant in common by adverse possession, nevertheless an actual ouster must be shown and an exclusion of the other tenants from possession."

And again is the applicable rule thus summarized in the succeeding section 43 of this text, as follows:

"Where one cotenant occupies the common property notoriously as the sole owner, using it exclusively, improving it and taking to his own use the rents and profits, or otherwise exercising over it such acts of ownership as manifest unequivocally an intention to ignore and repudiate any right in his cotenants, such occupation or acts and claim of

sole ownership will amount to a disseisin of his cotenants, and his possession will be regarded as adverse from the time they have knowledge of such acts or occupation and of the claim of exclusive ownership.''

Of course, such claim of adverse possession never becomes the foundation of such a title against a cotenant until they first have had actual notice of the repudiation of their rights.

In the instant case, according to the evidence, the appellee's assertion of full title and denial of any and of all right of occupancy or of joint interest in William Pauley in this property was based upon his own gift and surrender of his interest therein and his express disclaimer of any continuing right therein as joint owner, and under which, it appears, his wife had thereafter continuously occupied and controlled the farm, solely and exclusively as her own.

To like effect have we repeatedly announced and declared the rule to be that a deed made by a cotenant of his interest in land which was being then adversely held by another, or cotenant, was void as champtertous. To such effect was it held in the case of Pioneer Coal Co. v. Asher, 226 Ky. 488, 11 S. W. (2d) 116, that a possession to render a conveyance void as champertous must be an actual adverse possession, sufficient to apprise others that some one had exclusive possession. To like effect, also see Lanhan v. Huff, 228 Ky. 139, 14 S. W. (2d) 402; Pond Creek Coal Co. v. Hatfield, 228 Ky. 806, 16 S. W. (2d) 442.

The champerty statute, of course, does not apply to a conveyance by one of two tenants in common to his cotenant of an undivided interest in land held adversely. Speer v. Duff, 65 S. W. 126, 23 Ky. Law Rep. 1323; Pond Creek Coal Co. v. Hatfield, 228 Ky. 806, 16 S. W. (2d) 442.

We therefore conclude that the conveyance made by William Pauley to the appellant, Moore, of the land in question in January, 1925, when the same was, under and pursuant to the gift of the husband's joint interest therein, being held adversely and notoriously by his wife, Lora Pauley as her exclusive property, was a champertous deed, and, under the provisions of section 210 of the Statutes and the rules and principles of the cases hereinabove cited construing the statute, was null

and void. From this it follows that the appellant took under Pauley's deed so executed him, no interest, right, or title thereunder in or to the land in question, and that the judgment of the learned chancellor so finding and adjudging, was in all respects right and proper.

The judgment is affirmed.

Whole court sitting.