### Flanery v. Greene.

Jan. 23, 1942.

M. M. Redwine and V. H. Redwine for appellant.

John A. Keck and Littleton Jarvis for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

Thomas Parsons died intestate on April 7, 1866, the owner of a 264 acre farm in Elliott County, and was survived by a widow, a son and three daughters. The son, Gabe, obtained deeds from two of his sisters in 1883 and 1898 respectively, each conveying him an undivided one-fourth interest in the farm. The widow died in 1891. The third sister, Nancy, was mentally afflicted, never married, and made her home on the farm with Gabe and his wife.

The record does not show just when Gabe died but

states it was prior to 1921. He left a widow, Lucinda, a son, J. T., and four daughters. At the time of his death, Gabe and his son owed the Sandy Hook Bank $1,325.21 and his administrator, E. O. Greene, filed suit to settle the estate. By answer the bank set up its debt, and judgment was entered directing a homestead be set aside to the widow, Lucinda, and ordering the balance of the farm sold "outside of the homestead" to satisfy the bank's debt. After the allotment of the homestead there remained 184 acres of the farm which were sold under the judgment. The bank was the purchaser and on July 6, 1922, the master commissioner executed a deed conveying the 184 acres to it without mention being made of the homestead. By mesne conveyances the appellant, Isom Flanery, obtained a deed to this 184 acres on January 1, 1938.

A judgment was entered in the Elliott Circuit Court on June 8, 1938, declaring Nancy to be of unsound mind and incapable of managing or controlling her estate, and appointing Curtis Greene her committee. He qualified as such and on August 6, 1938, instituted this equitable action against Isom Flanery and Lucinda Parsons alleging his ward owned an undivided one-fourth interest in the 264 acre farm left by her father, Thomas Parsons, and that Flanery owned an undivided three-fourths interest therein subject to Lucinda's homestead. The prayer of the petition asks that the land be thus divided between Nancy and Flanery.

Flanery filed answer which he made a cross-petition against the bank on its warranty of title. The answer averred that Nancy had no interest in this land and that Flanery and his predecessors in title by more than 15 years' continuous adverse possession had acquired title thereto. This pleading further averred the committee was without authority to maintain this action for the reason that approximately five years before bringing this suit Nancy had conveyed any interest she might have had in this land to Lucinda. It was further pleaded that if the court be of the opinion Nancy had an interest therein then the interest adjudged her should not affect the 184 acres conveyed Flanery, but should be taken from the homestead. A reply completed the issue.

The chancellor adjudged Nancy to be the owner of an undivided one-fourth interest in the 264 acre farm; that same could not be divided without materially im-

pairing its value and commissioners were appointed to allot Nancy's interest to her according to quantity, quality and value without regard to the homestead of Lucinda. The commissioners were directed to allot the remaining three-fourths to Flanery "which three-fourths shall include the land set apart to Lucinda Parsons for her homestead as the widow of Gabe Parsons." The question is not before us as to what interest, if any, Flanery takes in the homestead tract after Lucinda's right of homestead expires. After judgment was entered, Flanery tendered an amended answer and cross-petition, wherein he averred Gabe's heirs were not made parties to the suit to settle the estate and alleged the judgment in that action was a nullity, and prayed that the judgment in this action should be set aside and Gabe's heirs be brought before the court herein.

The chancellor refused to file this amendment and after sustaining exceptions to the first. commissioners' report for certain irregularities, he appointed new commissioners who made the allotment to Nancy. Exceptions to the final report of the commissioners were overruled and Flanery appeals.

The greater part of appellant's brief is devoted to the question that Gabe's heirs were not parties to the suit to settle his estate, hence the judgment therein is not binding on them. It is insisted that under Sections 499 and 28 of the Civil Code of Practice as construed in Mart's Ex'r v. Potts, 227 Ky. 125, 12 S. W. (2d) 278, and Burchett v. Clark, 162 Ky. 586, 172 S. W. 1048, the judgment herein should be reversed and Gabe's heirs should be made parties to this action. However, we are not concerned here with the failure to make Gabe's heirs parties to the suit to settle his estate so long as Nancy was not a party thereto. This action was brought by Nancy's committee to have set apart to her the undivided one-fourth interest she inherited from her father, Thomas Parsons, in the 264 acres of land he owned at his death. This relief was granted her and on this appeal we are to determine if the chancellor erred in so doing.

The fact that the chancellor attempted to "clarify" his judgment in favor of Nancy by a subsequent order after the expiration of the term does not call for a reversal of the original judgment. Such order was without effect upon the original judgment directing the division of the land. The fact that the report of the com-

missioners filed thereunder was set aside for certain ir-
regularities on their part did not prevent the chancellor
at a subsequent term from appointing other commission-
ers to execute the original judgment.

Appellant insists that Nancy had conveyed her in-
terest in this land several years before this suit was
instituted and she being without title, her committee had
no authority to maintain this action. The purported
conveyance was dated September 18, 1926, and is an at-
tempt by George Frazier, who designated himself as
guardian of Nancy, to convey her property. There is
nothing in the record to show he was her guardian; but
if he were, his voluntary conveyance in which his ward
joined would not pass title. A person under disability
cannot be divested of real estate except by a court of
equity as provided by statute, Section 489 et seq., Civil
Code of Practice; Section 2150a, Kentucky Statutes, and
strict compliance with such statutes is required. Bennett
v. Owen, 183 Ky. 233, 208 S. W. 815. This purported con-
veyance did not divest Nancy of title and the grantee
thereunder made no claim to the property. It follows
Nancy's committee had authority to prosecute this ac-
tion.

Lastly it is argued that as Gabe took complete pos-
session of the entire farm at the death of his mother in
1891 and claimed Nancy's part therein by reason of sup-
porting and caring for her he obtained title thereto by
more than fifteen years' actual, open, exclusive and hos-
tile possession. Appellant relies upon Wilson v. Hoover,
154 Ky. 1, 156 S. W. 880; Parsons v. Justice, 163 Ky. 737,
174 S. W. 725; Wilcox v. Sams, 213 Ky. 696, 281 S. W.
832, 833, and perhaps other similar authorities, to sup-
port his position that adverse possession may run against
a cotenant. So it may, but as stated in Wilcox v. Sams,
supra, ''the possession of one joint owner is presump-
tively the possession of all, and that to oust his cotenants
his possession must not only be of the adverse character
required by law as against strangers, but such as to
bring home to his cotenants notice that he is holding and
claiming adversely to them.'' The possession must be
of such character as to put an ordinarily prudent and
diligent person on notice that a hostile claim is being as-
serted against his property. McCoy v. Thompson, 172
Ky. 794, 189 S. W. 1139.

Nancy was living in the ancestral home with her

brother, Gabe, as a member of his family and in her mentally afflicted condition was dependent upon him for support. The record does not show any acts of Gabe that would put an ordinarily prudent and diligent person in looking after her estate on notice that a hostile claim was being asserted to her property, and certainly there were no acts or words by Gabe that would bring such notice home to one lacking in mentality. The most the record shows is that Gabe said to some of his acquaintances that he owned the whole farm and obtained Nancy's interest thereby by reason of having supported her. No evidence is adduced that he made this statement in Nancy's presence or that she possessed sufficient mental alertness to understand the significance thereof. The evidence fell far short of establishing any acts or words by Gabe sufficient to give notice to his afflicted sister sharing his home and bounty that he was asserting a hostile claim to her land. Howard v. Turner, 287 Ky. 206, 152 S. W. (2d) 589; Howard v. Carmichael, 237 Ky. 462, 35 S. W. (2d) 852; Moore v. Pauley, 250 Ky. 156, 61 S. W. (2d) 1106; Whinery v. Crawford, 273 Ky. 325, 116 S. W. (2d) 631.

The judgment is affirmed.