REPUBLIC PRODUCTION COMPANY ET AL (J. H. SCOGGINS ET AL.)
v. ROBERT E. LEE ET AL.

No. 7107. Decided November 30, 1938.
Rehearing overruled January 18, 1939.
(121 S. W., 2d Series, 973.)

*T. J. Arnold* and *W. W. Moore, Jr.,* both of Houston, *Powell Wirtz, Rauhut & Gideon,* of Austin, *Hill & Bath, Tom F. Coleman,* and *Abney, Bath & O'Banion,* all of Henderson, and *Massingill & Belew,* of Fort Worth, for plaintiffs in error.

Deeds defective in description are nevertheless valid between the parties and invest the grantees therein with a superior title insofar as the grantors are concerned, and when land is partitioned and those acquiring same under said partition agreement enter into possession of said lands, use and fence the same and claim same against the world, and convey said land to a stranger, such acts are sufficient to terminate any cotenancy that might have existed at the time of said

partition. W. T. Carter & Sons v. Richardson, 236 S. W. 978; Welch v. Armstrong, 62 S. W. (2d) 335; McAnally v. Texas Company, 124 Texas 196, 76 S. W. (2d) 997.

*A. A. Garrett,* of Tyler, *Coleman & Coleman,* of Lufkin, *Sam J. Callaway* and *Robert C. Pepper,* of Fort Worth, and *Roscoe W. Irvine,* of Salt Lake City, Utah, for defendants in error.

The instruments introduced by defendants including the purported partition deeds of 1912, are patently defective and void on their face for lack of sufficient description to identify the land attempted to be conveyed, and are insufficient to give plaintiff constructive or other notice of their adverse claim or to form the basis of recovery under any of the statutes of limitation, insofar as plaintiff Lee is concerned, as the grant must describe the land to be conveyed and it must be identified by the description given it in the instrument itself. Norris v. Hunt, 51 Texas 609; Coker v. Roberts, 9 S. W. 665; Higgins v. Bankers Mortgage Co., 13 S. W. (2d) 683; Permian Oil Co. v. Smith, 129 Texas 413, 107 S. W. (2d) 564.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the District Court of Rusk County, Texas, by defendant in error Robert E. Lee, who will be designated herein as plaintiff. The purpose of the suit was to recover an undivided 1/10 interest in certain portions of what is known as the G. G. Cole lands in Rusk County. The facts necessary to show the status of the title and questions for decision may be summarized as follows:

About the year 1869 G. G. Cole acquired 160 acres of land, more or less, in Rusk County. It consisted of a part of the Elijah Collard Survey and a part of the William A. Elliott Survey. This 160 acres was the separate property of the said G. G. Cole. Afterwards Cole married Rosa Welsh and resided upon the 160 acres as a homestead until his death March 11, 1885. He left surviving him his wife, Rosa, and five children, towit: Katie or Celia, who married Charles Stebbins; Dora, who married J. H. Scoggins; Ethel, who married W. M. Finch; Claudia, who married Robert E. Lee, and Thomas or Tom. Mrs. Cole continued to live on this land as her homestead and sometime after 1885 married A. R. Faulkner. Claudia Cole married Robert E. Lee in the year 1906, and shortly thereafter she and her husband moved to the State of Utah. She died intestate

March 16, 1907, without children, and her husband inherited a 1/2 interest in her 1/5 interest in the 160 acres of land mentioned. Mrs. Faulkner, the surviving wife of G. G. Cole, continued to live on said land as her home until about the year 1922.

In the year 1912 Mrs. Faulkner, joined by her husband, and the four remaining children of G. G. Cole, believing that they were the sole owners of said 160 acres of land, and further believing that Robert E. Lee, the surviving husband of Claudia Cole Lee deceased, had no interest therein, made a partition of said 160 acres of land. They employed a surveyor who divided said land into five tracts, each of which was actually marked upon the ground by metes and bounds, and by appropriate markings of the corners. These tracts were designated Blocks Nos. 1, 2, 3, 4 and 5. In order to effectuate division of the land, the various parties executed to each other respectively five deeds. As a result of said partition, and the deeds evidencing same, Block No. 1 was set apart to Ethel Finch and her husband, W. M. Finch; Block No. 2 was set apart to Katie Stebbins and her husband, Charles Stebbins; Block No. 3 was set apart to Dora Scoggins and her husband, J. H. Scoggins; Block No. 4 was set apart to Mrs. (Rosa) A. R. Faulkner and her husband, A. R. Faulkner; and Block No. 5 was set apart to Tom Cole. These tracts together constituted the whole of the Cole lands.

It should be here noted that although Mrs. Faulkner as surviving wife of G. G. Cole, at the date of the partition, owned only a homestead interest in the whole 160 acres and a life-estate in an undivided 1/3 of same, yet it appears to be undisputed that after the partition—as between her and the other four children—she took a fee estate in Block No. 4, in lieu of her homestead interest in the whole and her life estate in an undivided 1/3 interest of the whole. The old homestead improvements where she had resided since her marriage to Cole were located on Block No. 4, which was deeded to her and her husband by the other parties.

We may further add that plaintiff urges serious objections to the validity of the partition deeds, as well as subsequent deeds in the various chains of title, because of insufficient descriptions; and also urges that because said deeds were void, the records thereof could not constitute notice.

In order to carefully present the facts touching the conveyances, use and possession of the respective blocks, it becomes necessary to state the facts with reference to each tract separately.

### BLOCK NUMBER ONE.

This tract was in the partition set apart to Ethel Finch and her husband. The deed to them was dated May 15, 1912, and was filed for record January 21, 1913. On October 1, 1912, they conveyed this tract to C. E. Christian, the deed being filed for record January 21, 1913. Christian took possession of this tract and cultivated and used same until he conveyed it to C. F. Stebbins, husband of Katie Stebbins, by deed dated January 15, 1913. This deed was also filed for record January 21, 1913. C. F. Stebbins fenced this tract and continued to use, cultivate and claim the same until November 29, 1921, when he sold it to M. C. DeGuerrin by deed of that date, which was filed for record January 26, 1922. On the date of his purchase M. C. DeGuerrin conveyed this tract to Gerald Stebbins, the deed being filed for record June 26, 1923. By deed acknowledged May 28, 1923, and filed for record June 26, 1923, Gerald Stebbins reconveyed this tract to M. C. DeGuerrin. By deed dated June 13, 1923, and filed for record June 26, 1923, DeGuerrin conveyed same to R. H. Scoggins. On January 19, 1925, R. H. Scoggins conveyed said tract to J. H. Scoggins, the deed being filed for record June 22, 1925.

No house was ever built on this tract, but it was fenced and continually used and cultivated by the various claimants under the instruments mentioned, which purported to convey same, from the year 1913, to the date of the institution of this suit, February 18, 1933. This included use and possession by M. C. DeGuerrin, Gerald Stebbins and R. H. Scoggins, all of whom were strangers to the original tenancy relationship.

### BLOCK NUMBER TWO.

This tract was set aside in the partition to Katie Stebbins and her husband, C. F. Stebbins, the deed to them being dated May 15, 1912, and filed for record October 21, 1912. On June 15, 1913, Stebbins and wife conveyed this tract to C. E. Christian. On the same date Christian reconveyed the tract to C. F. Stebbins, the deed being filed for record January 21, 1913. Said tract was fenced in the year 1913 and a house was built thereon, in which Stebbins and wife lived until they sold this tract to J. N. Scoggins December 8, 1915, the deed to Scoggins being filed shortly thereafter. Scoggins lived upon, used and cultivated the land until April 10, 1916, when he conveyed same to W. H. Barton, the deed being filed for record April 11, 1916. Barton lived upon, used and cultivated the land until he sold same to J. H. Scoggins January 15, 1918, the deed being

filed for record January 17, 1918. J. H. Scoggins continued to have the land occupied, used and cultivated until the filing of this suit February 18, 1933.

### BLOCK NUMBER THREE.

This tract was set apart in the partition to J. H. Scoggins and wife, the deed to them being dated May 15, 1912, and filed for record June 6, 1912. They almost immediately built a residence upon the tract, fenced same and continued to reside upon, use and cultivate same until March, 1932, when they moved to a house in Henderson, Texas, but continued to have the land occupied, used and cultivated until the filing of this suit February 18, 1933. They received all rents, revenues and profits from the land and paid taxes on same for nearly all these years.

### BLOCK NUMBER FOUR.

In the partition this tract was set aside to Mrs. A. R. Faulkner and her husband, the deed to them being dated May 15, 1912, but not filed for record until December 30, 1930. Mrs. Faulkner was living upon the tract at the time of the partition. On September 9, 1915, she and her husband conveyed this tract to L. L. Faulkner, but retained full possession for life. This deed was filed for record October 5, 1915. The husband of Mrs. A. R. Faulkner appears to have died prior to October 8, 1921. On that date L. L. Faulkner and wife and Mrs. A. R. Faulkner, as a feme sole, conveyed this tract to Reuben Johnson and the deed was filed for record February 25, 1922. Mrs. Faulkner apparently resided upon the place until the latter part of the year 1922, when she moved to the State of Utah. She died in Utah April 12, 1924. Reuben Johnson did not reside upon the land but occupied same by tenants and used and cultivated the land until November 24, 1926, when he conveyed same to Delia Brightwell, the deed being filed for record January 14, 1928. Delia Brightwell afterwards married A. G. Gill. The trial court found that the tenants of Reuben Johnson remained in possession of this tract until January, 1927, but that from January, 1927, to June of that year the place was unoccupied. However, Mrs. Gill went into possession of the tract about June 1, 1927, and occupied, used and cultivated the land until the filing of this suit, February 18, 1933.

### BLOCK NUMBER FIVE.

This tract was set aside in the partition to Tom Cole. Ap-

parently it was never involved in this litigation and will not hereafter be considered.

Although inheritance was cast upon plaintiff by the death of his wife March 16, 1907, yet it is admitted that he never made any claim to any interest in the Cole lands until sometime in the year 1932, when he was advised by an attorney of his interest and executed a contract for recovery of same. It is further undisputed that after the partition between the parties on May 15, 1912, the Cole children and Mrs. Faulkner, and their various vendees, claimed their respective tracts, constituting the whole of the Cole lands, exclusively as their own, and with no intention of recognizing any right, title or interest in plaintiff.

■ With reference to Block No. 4, it appears that plaintiff sued Delia Brightwell Gill and her husband, A. G. Gill, as owners of the land, and Lucey Petroleum Company as owner of an oil, gas and mineral lease executed to it by Mrs. Gill and husband. Prior to the trial, plaintiff settled the controversy as to Lucey Petroleum Company. Judgment in the trial court was in favor of plaintiff and against Mrs. Gill and husband for a 1/10 undivided interest in said Block No. 4 and in the 1/8 royalty interest retained in the lease to Lucey Petroleum Company. Mrs. Gill and husband gave notice of appeal, but failed to file transcript of the record in the Court of Civil Appeals in statutory time. That court, upon proper motion, on September 5, 1935, affirmed the judgment of the trial court as to Gill and wife and the sureties on their writ of error bond. No appeal was prosecuted to the Supreme Court by the Gills from that judgment. After affirmance of the judgment of the trial court upon the merits as to other parties, the Gills made application for writ of error upon the merits of the case, but did not complain of the action of the Court of Civil Appeals in affirming the judgment on certificate as to them. Their application was granted because of granting of writ of other plaintiffs in error in the main case upon the merits, and without the Supreme Court being advised of the affirmance of judgment by the Court of Civil Appeals on certificate. It therefore appears that the writ of error of Delia Brightwell Gill and her husband, A. G. Gill, was improperly granted. Such application is now dismissed and all costs as to the same shall be charged to said plaintiffs in error therein.

This therefore takes out of the case all questions as to Block No. 4 and leaves for consideration questions pertaining to Blocks Nos. 1, 2 and 3 only.

On September 22, 1930, J. H. Scoggins and wife executed and delivered to Ed C. Smith an oil, gas and mineral lease covering Blocks Nos. 1, 2 and 3, reserving the usual 1/8 royalty. On the same date, Smith assigned this lease to Republic Production Company. On September 7, 1932, Republic Production Company assigned to G. C. Wood said lease is so far as it covered a particularly described 29.9 acres, retaining to itself a 1/4 overriding royalty interest. All of said interests, except that retained by Republic Production Company, passed to Carl Dunham, trustee.

On October 19, 1932, Republic Production Company assigned said lease as to a particularly described 28 acres of said Blocks 1, 2 and 3 to Carl Dunham, retaining an overriding 1/4 royalty interest. This lease as to said 28 acres also passed to Carl Dunham, trustee.

On December 5, 1931, J. H. Scoggins and wife conveyed to C. O. Christian a 1/2 interest in the oil, gas and minerals in and under Block No. 3, subject to the prior lease executed to Ed C. Smith.

The controversy in this Court as to Blocks 1, 2 and 3 now involves plaintiff Lee on the one side, and J. H. Scoggins and wife, Republic Production Company and Carl Dunham, trustee, on the other. These latter will be designated defendants.

In the trial court, plaintiff was awarded an undivided 1/10 interest in said Block 1, 2 and 3. The mineral deed of Scoggins and wife to O. A. Christian was as to them reformed and affirmed, with provision that plaintiff's 1/10th interest be satisfied out of the remaining one-half interest held by Scoggins and wife. The title of Carl Dunham, trustee, to the mineral interests assigned by Republic Production Company in the 29.9 acres and the 28 acres was affirmed as between these parties, with provision that the undivided 1/10 interest of plaintiff be first satisfied from the interest retained by Republic Production Company. As between Republic Production Company on the one part and Carl Dunham, trustee, on the other, there is involved here a controversy as to the correctness of this part of the judgment, in the event the judgment in favor of plaintiff for the undivided 1/10 interest be upheld.

■ As against the claim of plaintiff to an undivided 1/10 interest in Blocks 1 ,2 and 3 the sole question for decision here is whether or not defendants established as against plaintiff title to said lands by limitation. From the statement set out above, it appears undisputed that Blocks 1, 2 and 3 after the

partition of May 15, 1912, were each fenced and partly put in cultivation and residences were erected on Blocks 2 and 3; that for a period of practically twenty years these three tracts were each continuously occupied, used, cultivated and claimed by the respective parties to whom they were set apart in said partition, and those holding under them. In addition, taxes were paid on each of these blocks for most of these years by those asserting title to same under the partition agreement. The fact of the continuous, open and notorious adverse possession of these tracts, as well as the intention of the parties, beginning as early as the date of said partition, to repudiate all claim of plaintiff and any tenancy relationship with him, is undisputed. Plaintiff seeks to defeat the legal effect of this unquestioned adverse possession by invoking the long-recognized rule that in order for one tenant in common to acquire title by limitation against another cotenant of a part or all of the common property, there must not only be the fact of the adverse possession, but there must also be an ouster of the cotenant not in possession, or a repudiation of the cotenancy relationship, and the cotenant not in possession must have actual or constructive notice of the repudiation or ouster.

It is a rule of wide application that if two or more tenants in common of a tract of land enter into a partition of same, and set apart the whole to the exclusion of a non-participating cotenant, such act of partition, when followed by adverse possession, even if wholly void as against the excluded cotenant, constitutes a complete and unequivocal repudiation of the cotenancy relationship. It is also well settled that such a partition, even though there be no sufficient record thereof as will give notice to the excluded cotenant, may be proven as an act manifesting an intention on the part of the participating cotenant to oust the other cotenant or repudiate the tenancy relationship with him. Cryer v. Andrews, 11 Texas 170; Honea v. Arledge, 56 Texas Civ. App. 296, 120 S. W. 508 (Writ Ref.); Gaddis v. Junker, 29 S. W. (2d) 911; Wilson v. Hoover, 154 Ky. 1, 156 S. W. 880; Russell v. Tennant, 63 W. Va. 623, 60 S. E. 609; 129 Am. St. Rep. 1024; Clymer v. Dawkins, 3 How. 674, 11 Law Ed. 778; Hodgson v. Federal Oil & Dev. Co., 285 Fed. 546; Warfield v. Liddell, 30 Mo. 272; 77 Am. Dec. 614; Brewer v. Keeler, 42 Ark. 289.

Perhaps the best expression in all the books as to the effect of a partition, so far as an ouster is concerned, is that contained in the case of Honea v. Arledge, 56 Texas Civ. App. 296, 120 S. W. 508, in which writ of error was refused. In that case it was said:

"The partition of the estate of Wm. Arledge and wife among the surviving children and grandchildren upon his death, in which proceeding the appellant was ignored, is a fact about which there is no dispute in the record. This proceeding, by its publicity and nature, was so notorious and adverse that it was sufficient to constitute an ouster of the appellant, and the court had the right to assume as a matter of law that a disseizin was thereby accomplished, which, if followed by the necessary adverse holding, and for the statutory period, in the manner essential to constitute a bar, would ripen into a title by limitation. Cryer v. Andrews, 11 Tex. 170; Lessee of Clymer et al. v. Dawkins, 3 How. 674, 11 L. Ed. 778; Brewer v. Keeler, 42 Ark. 289; Puckett v. DcDaniel, 8 Tex. Civ. App. 630, 28 S. W. 360; Wood on Limitation, sec. 266. In the Clymer Case, above cited, the court said: 'In our judgment it was wholly unnecessary to decide whether those proceedings were absolutely void or not, for, assuming them to have been defective or invalid, still, as they were matters of public notoriety of which Clymer was bound at his peril to take notice, and as Lynch and Blantern under those proceedings claimed exclusive title to the land assigned to them, adversely to Clymer, if the defendants entered under that exclusive title, the possession must be deemed adverse, in point of law, to that of Clymer.' The elements constituting an adverse possession sufficient in the course of time, to bar by limitation the right of one joint owner to recover a portion of the common property in an action against the other, are not different or more onerous than in cases where strangers only are concerned. The difference lies in the essential facts necessary to furnish evidence of the hostile or adverse holding, or, more strictly speaking, of disseizin by the adverse claimant. Gillaspie v. Osborn, 3 A. K. Marsh. (Ky.) 77, 13 Am. Dec. 140, and notes. While in the case of a stranger possession alone might be ample evidence of the ouster of the true owner, and would support an action to recover title and possession, yet in the case of tenants in common it would not be. As between the latter it would be necessary that some further evidence be shown of an intent to oust the co-tenant and to assert exclusive title and ownership to the common property, in addition to mere possession, since as between co-tenants the possession of one is not necessarily hostile to the other and would not put him upon notice that his title was being disputed. When, however, an overt act, evidencing an unequivocal intent on the part of one joint owner to claim the entire common property to the exclusion of the other joint owner, is committed, and that

act is so notorious as to reasonably convey that impression, it is then sufficient to constitute in law an ouster, and limitation begins to run from its occurrence. Coogler v. Rogers, 25 Fla. 853, 7 South. 391; Gillaspie v. Osburn, 3 A. K. Marsh. (Ky.) 77, 13 Am. Dec. 140, and cases cited in notes; Wood on Limitation, sec. 266; Feliz v. Feliz, 105 Cal. 1, 38 Pac. 521; Gregory v. Gregory, 102 Cal. 50, 36 Pac. 364; Wright v. Kleyla, 104 Ind. 223, 4 N. E. 16; Baird v. Baird, 21 N. C. 524, 31 Am. Dec. 399.

"It is difficult to conceive of an overt act more notorious in character, and more clearly indicating a purpose to appropriate the common property to the exclusion of another joint owner, than was evidenced by the partition proceedings instituted by the heirs of Wm. Arledge, and their subsequent use of their respective portions. It showed an unequivocal intent upon their part to ignore whatever claim the appellant may have had, and to divide up the land and use the different parts in severalty. The decree of partition was intended to have the effect of vesting in each an exclusive personal right to hold that portion allotted to him, and clearly indicated the purpose of each to so hold his portion. These acts were open and notorious, and occurred under such conditions as could not leave any room to doubt the purpose of those engaged in bringing them about. It is immaterial that the appellant was not in the vicinity of where the land was situated, and did not have actual knowledge of those proceedings. They were of such a character as he was compelled to notice at his peril."

■ In the present case we have the fact of the undisputed repudiation of the cotenancy relationship, followed by the open, continuous and notorious possession, use and occupancy of the land by those who made the repudiation, claiming in their own right and to the exclusion of plaintiff. The sole question remaining, therefore, is whether or not there was constructive notice to plaintiff of such repudiation and adverse claim; that is, were the facts and circumstances concerning the partition, occupancy, use and possession of the land sufficient that it may be said, as a matter of law, that plaintiff was visited with constructive notice of the adverse possession and claim.

In the recent case of Moore v. Knight, 127 Texas 610, 94 S. W. (2d) 1137, we had occasion to say:

"It is not necessary that actual notice of an adverse holding and disseizin be brought home to a cotenant. Such notice may be constructive, and will be presumed to have been brought home to the cotenant when the adverse occupancy and

claim of title is so long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others except the occupant, that the law will raise the inference of notice to the cotenant out of possession; or the jury may rightfully presume such notice."

It has long been settled in Texas that a conveyance by one cotenant to a stranger, or by one or more cotenants to another cotenant, purporting to convey the entire common property, when followed by actual adverse possession, amounts to a disseizin of the non-participating cotenant; and record of such conveyance, followed by possession, constitutes notice of the repudiation. Jones v. Siler, 129 Texas 18, 100 S. W. (2d) 352, and cases cited, particularly McBurney v. Knox, 273 S. W. 819. There is no reason whatever why a series of deeds which taken together purport to convey all of the common estate, followed by adverse possession, should not be given the same effect. That is the situation here.

However, plaintiff seeks to avoid the effect of the several conveyances and the record thereof, followed by the undisputed possession of twenty years, by contending that the several partition deeds were void on account of insufficient description, and that consequently the record thereof was void and gave no notice. In light of what is said later herein, we are not willing to say that the deeds were void for want of sufficient description, but for sake of the discussion it will be taken that they were. In our opinion the result is the same.

In the first place, if it can be said that a partition proceeding in a court, which is undoubtedly void as to a cotenant not a party thereto, and the record thereof as to him is a nullity, is an act of such "public notoriety" as to constitute notice of a disseizin, as has many times been held, it would seem that a voluntary partition, accomplished by an actual survey and marking of the separate parcels upon the ground, accompanied by execution of deeds and followed by actual entry, occupancy and use of the respective parcels by those to whom they have been separately set aside, should be regarded as of equal public notoriety. This, however, we do not need to decide.

It will be observed from the detailed statement set out above that with reference to Blocks 1 and 2 several entire strangers to the tenancy relationship, of which plaintiff was originally a constituent member, obtained deeds of conveyance to same, entered into actual possession and used and occupied same for a number of years. Block No. 1 did not come into possession of J. H. Scoggins until January 19, 1925, even if it could be said that he, as husband of one of the Cole

heirs, was not a stranger to the common title. Block No. 2 did not come into his possession until January 15, 1918. Prior thereto C. E. Christian, J. N. Scoggins and W. H. Barton had occupied, used and claimed this block as strangers to the tenancy relationship. Thus it appears undisputed that if the various conveyances under which the several parties held were all void, the strangers to the tenancy relationship were, as to plaintiff, outright trespassers upon the land. Being in possession of the land for a number of years as trespassers, plaintiff was put upon notice of the nature of their claims. Upon inquiry he would have necessarily learned that they were not in possession of the land in recognition of his rights as a cotenant, but were in possession of the respective blocks by virtue of the partition and the various instruments which purported to pass the title in severalty to the blocks occupied and claimed by them. If by virtue of the adverse possession of any one trespasser, of any one of the blocks plaintiff was put on notice of the partition, then, as a matter of law, under all the decisions he was charged with knowledge of the disseizin and repudiation. When once visited with notice of the partition of the land among his fellow cotenants, to his exclusion, he, as a matter of law, had notice of the ouster,—it being followed by actual adverse possession.

■ It is contended by plaintiff, however, that as Mrs. Cole remained in possession of Block No. 4 as a life tenant and under her homestead claim, then as to an undivided one third of the whole there could be no adverse possession until after she removed from the land. This argument overlooks the voluntary partition. Even if the instruments of conveyance were void, the partition was nevertheless valid as to those who participated therein. As to Mrs. Cole, this partition agreement undoubtedly had the effect of substituting her claim to the fee to Block No. 4 for her life estate and homestead claim in the whole. It follows that as plaintiff was, as a matter of law, charged with knowledge of the partition, notwithstanding the invalidity of the conveyances, the partition as to him must be given the same effect as it had as to Mrs. Cole.

It is finally contended that judgment was properly rendered against defendants, because in suing in cross action for Blocks 1, 2 and 3, they were described as in the partition deeds, and there was no sufficient description upon which judgment could be rendered in their behalf for these blocks. It must be remembered, however, that plaintiff was the original actor in the trial court. Unless he established title to these blocks, defendants were entitled to judgment against him. In his petition he sued

for an undivided 1/10 interest in Blocks Nos. 1, 2 and 3, describing Block 1 as having been conveyed by Mrs. Faulkner and others to Finch and wife May 15, 1912, giving book and page of its record. This is followed with the specific description contained in the partition deed to Finch and wife, and is then followed by reference to the record of all of the deeds in the chain of title to said Block No. 1 as set out above. Likewise he described Blocks Nos. 2 and 3 by reference to the partition deeds and with the identical description contained in said deed. He followed these descriptions by reference to the record of the various deeds in the chain of title of these blocks. Thus it is expressly shown that plaintiff considered the description in these various deeds as sufficient as a basis for his pleadings. He contends, however, that although his own specific descriptions were void, nevertheless he had a general description upon which he could base judgment. If it be conceded that he is right in all this, and can be heard to repudiate his own specific descriptions, nevertheless, looking to the pleadings as a whole, it is perfectly evident that there was ample description of Block 1, 2 and 3 to justify judgment in favor of defendants for these blocks.

Plaintiff in his petition, after describing Blocks 1, 2, 3 and 4, alleged that said blocks constituted all of the Cole 160 acres, save and except Block No. 5 set aside to Tom Cole by deed dated May 15, 1912. He then set out the field notes of said Block No. 5 "according to an *actual* survey." These field notes contained several calls by which this block can be located upon the ground. He further alleged that Block No. 4 had been surveyed and set out the field notes of said actual survey. These field notes contained calls by which Block 4 can be located upon the ground. He alleged that Block No. 5 is bounded on the east by Block No. 4 and on the north by Block No. 3. Block No. 3 calls for its northeast corner to be the same as the southeast corner of Block No. 2. The field notes of Block No. 2 call for its northwest corner to be the same as the northeast corner of Block No. 1. In addition to all of this, the trial court in its judgment ratified and confirmed the oil and gas leases covering certain specifically defined parts of Blocks 1, 2 and 3, and declared that each of these tracts covered by said leases were parts of Blocks 1, 2 and 3 of the original petition. The trial court also reformed and confirmed the description of the mineral deed executed by Scoggins and wife to Christian, conveying one half of the minerals in Block No. 3. Manifestly, the confirmation and ratification of all of these instruments could not have been done had it not been possible to

actually locate these blocks upon the ground. In the field notes of Block No. 3 as reformed, its northeast corner is called to be the same as the southeast corner of Block No. 2. It is thus demonstrated that as to at least three of these blocks they have been actually located and surveyed upon the ground and from plaintiff's own pleading the blocks here in controversy can be located with certainty.

■ Finally, it is contended that the question of whether or not plaintiff had notice of the repudiation and disseizin was an issue of fact, and that the trial court determined this issue of fact in favor of plaintiff and against defendants. The record, we think, shows beyond question that the trial court did not make a finding of fact in favor of plaintiff in this regard, but shows affirmatively that he found the *facts* against plaintiff and drew the wrong legal conclusion thereform. The record discloses that after defendants had offered the testimony of several witnesses tending to show open, continuous and notorious possession of Blocks 1, 2 and 3 for a period of about twenty years, the court interposed to inquire if there was any controversy upon the issue of notorious possession. He was assured by counsel for all parties that there was not. Thereupon the following colloquy occurred:

"The Court: There seems to be no question from the evidence that has already been introduced as to the possession of Scoggins, and apparently as to Scoggins' claim with reference to it, and unless the Plaintiff presented some testimony to the contrary, why, that would be my findings, and I am just thinking about saving some time and not putting all of this same evidence right on top of the other.

"Mr. Futch: I think that is perfectly satisfactory as far as I am concerned.

"Mr. Bath: I think that matter of valuable improvements in good faith, I don't think there is any controversy about that.

"The Court: The only thing that I have in mind is just not encumbering the record.

"Mr. Arnold: I take it it is agreed that his character of possession was *notorious to the world.*

"Mr. Callaway: We are not agreeing to it. *It is proven by about half a dozen witnesses.*

"The Court: Unless they make some proof to the contrary, I would so hold.

"Mr. Callaway: As far as I know, Your Honor, we will have no proof to the contrary.

"Mr. Pepper: What I want to get in here, we are not agreeing that testimony establishes notoriety. As to the legal effect, we are not agreeing to it.

"Mr. Arnold: I just wanted to show the *notorious character* of it. I want to tender enough. There are several more names here.

"The Court: *You have tendered enough to satisfy my mind.*

"Mr. Callaway: I will state if I were the Court, I would find in your favor on that point.

"Mr. Futch: Under the Court's suggestion, I don't care to go into it further.

"The Court: I will *so find,* but as to the *legal effect,* I am not passing on that now." (Emphasis ours.)

Here we have both a finding by the Court and an admission by opposing counsel that the testimony adduced shows the facts of notorious, open and continuous adverse possession for approximately twenty years. The colloquy involved the question of whether or not the possession was "notorious to the world." The Court expressly stated that he found that it was. We are of the opinion that this state of facts meets every requirement of law necessary to charge plaintiff with notice of the disseizin and adverse claim of the defendant. The most accurate statement of the rule applicable under such circumstances is that found in the learned opinion in the case of Warfield v. Lindell, 30 Mo. 272, which has been adopted by text writers as well as by courts in many decisions. It is as follows:

"To constitute an adverse possession of one tenant in common against his co-tenants, there must be some notorious act asserting an entire ownership. It is further said in some cases that this act must be brought home to the knowledge of the co-tenant. This, we suppose, depends upon the nature of the act. If it consists altogether of a mere verbal assertion of entire ownership, such an assertion could not with any propriety be regarded as an act of adverse possession of which the co-tenant was bound to take notice, unless made to him or communicated to him. A declaration to a mere stranger amounts to nothing, unless that declaration is brought to the knowledge of the co-tenant. But when the act is of such a nature as the law will presume to be noticed by persons of ordinary dili-

gence in attending to their own interests, and of such an unequivocal character as not to be easily misunderstood, it is not believed to be necessary that any positive notice should be given to the co-tenant, or that it devolves upon the possessor to prove a probable actual knowledge on the part of the co-tenant. It is sufficient that the act itself is *overt, notorious;* and if the co-tenant is ignorant of his rights or neglects them, he must bear the consequences." (Emphasis by Court.)

Under all the authorities we conclude that defendants establish title to Blocks 1, 2 and 3 by limitation under the ten years statute, and the question of whether or not the deeds were sufficient as a basis for a claim under the five years statute is immaterial.

The trial court having rendered judgment in favor of plaintiff for an undivided 1/10th interest in Block 1, 2 and 3, rendered judgment in favor of Carl Dunham, Trustee, against Republic Production Company, decreeing that the interest of plaintiff should be first satisfied out of the interest retained by the Republic Production Company. The Republic Production Company has complained of the action of the Court in that regard. As the judgment in favor of plaintiff as against Scoggins and wife and Republic Production Company is to be reversed and rendered, it becomes necessary to set aside the judgment in favor of Carl Dunham, Trustee, in so far as it decreed a preference in his favor as against Republic Production Company.

Since the case reached the Supreme Court plaintiff Robert E. Lee and plaintiffs in error Frances Oil Company and Frank King have settled their differences and as to them the case here has been dismissed.

The judgments of the Court of Civil Appeals and of the district court in favor of defendant in error Robert E. Lee and against plaintiffs in error J. H. Scoggins and wife, Dora Scoggins, and Republic Production Company are reversed, and judgment is here rendered that as to Blocks 1, 2, and 3, as described in the district court's judgment, defendant in error Lee take nothing, and that said plaintiffs in error recover of said defendant in error all his right, title and interest in and to said Blocks 1, 2 and 3.

The judgments of the Court of Civil Appeals and of the district court in favor of Carl Dunham, Trustee, against Republic Production Company, in so far as they decree satisfaction of the judgment in favor of defendant in error Lee out of the interest of the Republic Production Company, are here

reversed and judgment is here rendered in favor of Republic Production Company in this regard, with the understanding that all rights between the parties evidenced by the contents of any conveyance or assignment between them remained undisturbed by this judgment. The judgments of the Court of Civil Appeals and of the district court are in all other respects affirmed.

Defendant in error R. E. Lee should pay all costs in the Supreme Court and in the Court of Civil Appeals as between him and J. H. Scoggins and wife and Republic Production Company. Carl Dunham, Trustee, should pay all costs of the Supreme Court and of the Court of Civil Appeals incurred in the controversy as between him and Republic Production Company.

Opinion adopted by the Supreme Court, November 30, 1938.

### SUPPLEMENTAL OPINION.

8 It appearing in this case that defendant in error, Robert E. Lee, and plaintiffs in error, Frank King and Frances Oil Company, have entered into a written agreement and stipulation, filed herein, showing that all matters in controversy between them have been settled, and requesting that this case as to them be dismissed, as is recited in the original opinion filed herein,—it is hereby ordered that this case as between said parties is dismissed, and all costs incurred by reason of said parties being included in this appeal are hereby assessed against defendant in error Robert E. Lee.

It appearing that the above order was made on November 30, 1938, but by oversight not entered in the minutes, it is ordered that it be now entered as of that date.

Opinion filed Dec. 7, 1938, but effective as of November 30, 1938.

Rehearing overruled January 18, 1939.