Ernest M. POENISCH, Jr., et al.,
Petitioners,

v.

Mamie QUARNSTROM, Respondent.

No. A–8903.

Supreme Court of Texas.

Oct. 31, 1962.

Fischer, Wood, Burney & Nesbitt, James R. Harris, Corpus Christi, for petitioners.

E. T. Yates, Brownsville, for respondent.

NORVELL, Justice.

This is an action of trespass to try title and for partition arising from a complicated factual situation. The legal question involved relates generally to the question of notice to co-tenants and notice to owners of property after the rendition of a judgment against persons remaining in possession, and the effect that such notice or lack thereof has upon the running of the ten-year real property statute of limitations, Article 5512, Vernon's Ann.Civ.Stats. A judgment generally favorable to the defendant, Mamie Quarnstrom, also known as Marie Ottman Quarnstrom, the limitation claimant, has been affirmed by the Court of Tex.Civil Appeals, 353 S.W.2d 474.

On April 10, 1926 an agreed judgment was rendered by the District Court of Cameron County in Cause No. 1973, styled New York and Brownsville Improvement Company, Ltd., et al. v. Frank J. Ottman, et al. By this judgment, New York and Brownsville Improvement Company, Ltd., et al. recovered title and possession to a tract of land 65 feet by 100 feet out of Lots 11 and 12 of Block T of the Original Town of Brownsville. This tract is generally referred to as the rear (or north) 65 feet of Lots 11 and 12. The judgment recites that the description is intended to cover a tract of land fronting 65 ft. on Eleventh St. and 100 feet on the alley dividing Block T. The judgment also awarded to Lucia Ottman, Frank Ottman, (Jr.) Edward Ottman and Marie Ottman Quarnstrom (respondent here), the widow and children, respectively, of Frank Ottman, deceased, and to the intervenors, W. H. and Hortense Ward (the attorneys for the Ottmans) the title and possession in and to a tract of land 55 feet by 100 feet out of said Lots 11 and 12 in Block T of the City of Brownsville. This tract fronts 100 feet on St. Charles Street and extends back to the alley running through said Block T and is generally referred to as the front (or south) 55 feet of Lots 11 and 12.

While some complaint is made as to this judgment, no defect is pointed out which would render the same void or ineffective as to the parties to the suit. It was rendered by a district court having jurisdiction of the parties and the subject matter and hence must be treated as valid and binding. Clayton v. Hurt, 88 Tex. 595, 32 S.W. 876. The circumstance that the judgment was not signed by the parties or their attorneys constitutes no objection to its binding effect.

Subject to the question of the validity of the 1926 judgment mentioned (which we hold to be valid) and the effect of a certain redemption certificate issued in 1952, hereinafter mentioned, the parties agreed that the record title to the property was vested as follows:

"The front 55 feet of Lots 11 and 12.

"Ernest M. Poenisch, Jr.—an undivided one-half interest in Lot 11.

"Rose Marilyn Hall—an undivided one-half interest in both Lots 11 and 12.

"Mamie Quarnstrom—an undivided one-half interest in Lot 12."

"Rear 65 feet of Lots 11 and 12.

"Ernest M. Poenisch, Jr.,—an undivided 11/16 interest.

"Lulu George, Mary Helen Ammann and J. C. George, Jr.—an undivided 1/32 interest, (each having an undivided 1/96 interest).

"Mary Katheryne Whitelaw—an undivided 1/32 interest.

"Mamie Quarnstrom—an undivided one-fourth interest."

By the judgment of the trial court, the defendant, Mamie Quarnstrom, on her plea of limitation, was awarded judgment for the front 55 feet of Lot 12 and the rear 65 feet of Lots 11 and 12. She was also awarded judgment for a one-half interest in the front 55 feet of Lot 11, the other one-half interest being awarded to Ernest M. Poenisch, Jr.

This judgment was predicated upon the trial court's implied finding that Mamie Quarnstrom had perfected title to all of Lots 11 and 12 under the ten-year statute. Article 5510. The award of an undivided one-half interest in the front 55 feet of Lot 11 to Ernest M. Poenisch, Jr. was based upon a tax lien foreclosure under which Poenisch acquired the interest asserted by Mamie Quarnstrom in and to the front 55 feet of Lot 11.

 Insofar as the front 55 feet of Lots 11 and 12 are concerned, the dispute is primarily between the plaintiff, Rose Marilyn Hall and the defendant, Mamie Quarnstrom. W. H. Ward and Hortense Ward were attorneys at law and represented the Ottman-Quarnstrom interests in the litigation which culminated in the 1926 judgment. They intervened in the suit and their interest was set aside to them with the Ottman interest in the front 55 feet of Lots 11 and 12. They had a power of attorney which entitled them to a one-half interest in the recovery. After the entry of the 1926 judgment the Ottmans held a one-half interest in the front 55 feet of Lots 11 and 12

while W. H. Ward and Hortense Ward owned the other one half. Mamie Quarnstrom eventually acquired all the Ottman interest in and to this portion of the two lots while Rose Marilyn Hall succeeded to the Ward interest. We thus have a tenant in common situation to which the rule stated by this Court in Phillipson v. Flynn (1892), 83 Tex. 580, 19 S.W. 136, and reaffirmed in Southern Pine Lumber Co. v. Hart (1960), 161 Tex. 357, 340 S.W.2d 775 has application. In the opinion rendered in the first case mentioned, this Court said:

"The possession of a co-tenant or tenant in common will be presumed to be in right of the common title. He will not be permitted to claim the protection of the statute of limitations unless it clearly appears that he has repudiated the title of his co-tenant and is holding adversely to it. Possession and payment of taxes on the property do not constitute the assertion of an adverse right. There must be something more. Alexander v. Kennedy, 19 Tex. 488, 496. The acts relied upon by the tenants in common in showing an ouster of his co-tenants, and the assertion of an adverse claim, should be more certain and unequivocal in character than would be necessary in ordinary cases where there is no privity of estate between the parties claiming the property. And in order to affect the co-tenants with this adverse holding, notice of such fact must be brought home to them, either by information to that effect, given by the tenant in common asserting the adverse right, or by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim that they will be presumed to have notice of such adverse right. Moody v. Butler, 63 Tex. 210; Wood, Lim. Act. § 266."

Similar statements of the rule may be found in the numerous reported opinions. In Condra v. Grogan Mfg. Co., 149 Tex. 380, 233 S.W.2d 565, this Court held that while the possession of premises was suf-

ficient to satisfy the requirements of the statutes as against those having actual notice of an adverse claim (and all holding under them), it was not sufficient to satisfy the statute as to tenants in common having no notice of such claim. Writing for the Court, Mr. Justice Smedley said:

"A different question of limitation is presented as to the interest that was inherited by Mrs. Davenport from her husband, W. J. Smith, and their child. She was not a party to the agreement of partition and neither she nor her heirs, who were her husband, A. Davenport, and their two children, are shown to have had actual knowledge that the Condras were claiming the 49.5 acre tract adversely to them. This being true, the possession of the Condras did not become adverse to Mrs. Davenport and her heirs unless the acts of the Condras in the assertion of adverse claim were of such unequivocal notoriety as to charge the Davenports with notice. Phillipson v. Flynn, 83 Tex. 580, 19 S.W. 136; Stiles v. Hawkins, Tex.Com.App., 207 S.W. 89; Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137; Republic Production Co. v. Lee, 132 Tex. 254, 121 S.W.2d 973; Bruni v. Vidaurri, 140 Tex. 138, 147, 166 S.W. 2d 81; 1 Am.Jur. pp. 822–824, Sec. 53. There has been much elaboration of this rule in the above cited authorities and in other cases. One of the most thorough statements of it appears in Republic Production Co. v. Lee, 132 Tex. 254, 121 S.W.2d 973. The foregoing and other authorities show that possession of a cotenant will be presumed to be in his right as cotenant and that acts relied upon to establish an ouster of his cotenants and to start the running of limitation against them must be of such unequivocal nature and so distinctly hostile to their rights that the intention to disseize is clear and unmistakable."

While the defendant made no specific reference to the statement of facts as supporting the contention, it is asserted that Mamie Quarnstrom told Mrs. Hortense Ward that she would not accept the 1926 judgment. Our search of the statement of facts discloses the following:

"Q: Well, didn't you say a minute ago that you did acknowledge to them that they (W. H. and Hortense Ward) owned a half? A: But now you made it plain. You said agree, and I did not agree on that.

"Q: If you acknowledged it, you acknowledged it to them that they owned one-half of Lots 11 and 12, the front of 11 and 12? A: But I did not agree to what they had done.

"Q: You didn't agree to what they did? A: Yes, what they did.

"Q: But you did acknowledge that they owned one-half by virtue of the judgment that was entered; is that right? A: We had to do that in order to give them the power of attorney. That is all.

"Q: All right, now, but your statement is now that you did not agree with what they did? A: No, I did not agree.

"Q: All right. But as far as the judgment was concerned, you agreed that they owned one-half of the front 55 feet of 11 and 12 under the judgment? A: Only because of that, because they had the power of attorney to do it. To do it, that is all."

Further in the course of her testimony, Mrs. Quarnstrom testified that after the judgment had been rendered Mrs. Ward told the witness and her mother about the judgment and that she told Mrs. Ward, "That I didn't agree to what she had done."

■ This testimony falls far short of meeting the test laid down by the cases above cited. At most it expressed disagreement and dissatisfaction with the action taken by the Wards in settling the case.

There was no direct repudiation of the judgment and refusal to abide therewith. No action was taken to discharge the Wards as attorneys and no action taken to set the judgment aside. A mere statement that one does not agree with what his attorney has done cannot be construed as notice of a repudiation of the attorney's rights in the property which had been acquired under a contract and thereafter confirmed by a judgment.

The only other reference in defendant's brief to any other transaction or event between Mrs. Quarnstrom and the Wards or Mrs. Hall was an asserted attempt by Mrs. Hall to sell her interest in the property to Mrs. Quarnstrom which took place in 1957 approximately two years before the suit was filed. This incident could have no bearing upon notice in connection with the ten-year statute.

■ In view of the rule that possession of one cotenant will be presumed to be in his right as a cotenant, we hold that in legal contemplation there was no evidence that either the Wards or Mrs. Hall were put on notice of the hostility of Mrs. Quarnstrom's claim in and to the front 55 feet of Lots 11 and 12. Judgment should have been rendered in accordance with the stipulation relating to the record title.

As to the rear 65 feet of Lots 11 and 12, we have a similar situation. One of the plaintiffs in the suit which resulted in the 1926 judgment was Mary Kingsbury Forto, who was awarded an undivided ¼ interest in the tract. She died in 1930 and the interest passed to the Missionary Society of the Oblate Fathers of Texas. This interest eventually passed to Mrs. Quarnstrom in 1950. It thus appears that from and after 1926 Mrs. Quarnstrom and those under which she claims were either holding over after a judgment had divested them of title, or were holding as owners of an undivided interest in the property, that is, as tenants in common with the petitioners. Sweeten v. Park, 154 Tex. 266, 276 S.W.2d 794,

affirming Park v. Sweeten, Tex.Civ.App., 270 S.W.2d 687; Green v. Vance, 158 Tex. 550, 314 S.W.2d 794.

As to possession of the rear 65 feet of Lots 11 and 12, the evidence relating thereto shows at most an intermittent and almost casual use by Mrs. Quarnstrom until about five years before this suit was filed when she commenced using it for an automobile parking lot and leasing it for such purpose. From 1926 to about 1932, Mrs. Quarnstrom had a chicken coop on the back lot, but there were no other buildings thereon from 1926 to 1942. A one-room house was moved on the tract about 1942 and rented intermittently until 1956. There was evidently a substantial break in the continuity of possession from 1932 to 1942. Hardy v. Bumpstead, Tex.Com.App., 41 S.W.2d 226, 76 A.L.R. 1488. The evidence falls far short of that required to carry notice of an adverse claim to actual owners situated as were the petitioners here. Nor is the evidence of possession and the use of the property sufficient in law to carry with it the inference of a repudiation of cotenancy and the petitioner's rights in the property under the theory "of unequivocal notoriety as distinguished from actual notice of repudiation" as was the case in Vasquez v. Meaders, 156 Tex. 28, 291 S.W.2d 926.

It is asserted by respondent that she is entitled to recover title to the disputed property because in 1952 she redeemed all of Lot 12 and the rear 65 feet of Lot 11, Block T of the Original Town of Brownsville from certain tax lien foreclosure sales made to Ernest Poenisch, Jr. in 1950 to satisfy claims of the State of Texas, Cameron County, the Brownsville Navigation District and the Brownsville Independent School District. The redemption certificate mentions two tax suits, Nos. 26115 and 26116 on the docket of the District Court of Cameron County. (As above mentioned, there was a tax lien foreclosure sale covering an interest in the front 55 feet of Lot 11, but this interest was not redeemed from the tax sale.)

■ The redemption certificate issued by the Tax Assessor and Collector of Cameron County recited that Mamie Quarnstrom had made an affidavit claiming "partial ownership of all of Lot 12 and the rear 65 feet of Lot 11." The general rule is that when a cotenant redeems property from a tax foreclosure sale, such action is considered as being for the benefit of all co-owners. Bush v. Bush, Tex.Civ.App., 275 S.W. 1096, no wr. hist., 14 Am.Jur. 123, Cotenancy § 54. There is nothing shown here that would prevent the general rule from being applied. The redemption of the property could at most give rise to some claim for contribution which is hereinafter noticed.

■ We sustain petitioner's assertion that there is no evidence of probative force supporting the finding that respondent had matured a title by limitation to Lot 12 and the rear 65 feet of Lot 11 in Block T, of the Original Town of Brownsville.

The judgments of the District Court and the Court of Civil Appeals are reversed and this cause remanded to the trial court with directions to enter judgment recognizing title to be vested in the following persons in and to the following undivided interests, viz.:

"(a) Petitioner Ernest M. Poenisch, Jr. —11/16ths in the rear 65′ of Lots 11 and 12; and 1/2 in the front 55′ of Lot 11.

"(b) Petitioner Rose Marilyn Hall —1/2 in the front 55′ of Lots 11 and 12.

"(c) Petitioners Lula George, Mary Helen Ammann and J. C. George, Jr. —1/96th each in the rear 65′ of Lots 11 and 12.

"(d) Petitioner Mary Kathryne Whitelaw —1/32nd in the rear 65′ of Lots 11 and 12.

"(e) Respondent Mamie Quarnstrom —1/2 in the front 55′ of Lot 12; and 1/4 in the rear 65′ of Lots 11 and 12."

———◆———

The District Court will partition the lands here involved between the respective owners. If the Court should find that the property is not partible in kind, the District Court will order the premises sold and the proceeds of such sale paid over to the parties in proportion to their respective undivided interests.

The trial court in its judgment will take into account the tender by petitioners (as plaintiffs in the district court) of $4,030.66 conditioned upon the recovery of the interests in and to the property claimed by petitioner-plaintiffs. This tender was based upon the redemption of a substantial portion of the property by Mamie Quarnstrom from the tax lien foreclosure sale heretofore mentioned. The trial court will also consider such other matters as may be authorized by law.

If the property be ordered sold, the maner and details of selling the lands here involved, either in one or more tracts, are to be controlled by the sound discretion of the court and determined by the judgment entered. The Court may recognize such agree-

ments as to details as may be made by the parties to this suit.

Judgments of the lower courts reversed and the cause remanded to the District Court with instructions.