John B. WILLIAMS, Appellant,

v.

W. W. WILLIAMS et al., Appellees.

No. 5755.

Court of Civil Appeals of Texas, Waco.

Dec. 8, 1977.

Rehearing Denied Jan. 5, 1978.

Lawrence E. Meyers, Law Offices of Max E. Clark, Fort Worth, and John B. McNamara, John B. McNamara, III, McNamara & McNamara, Waco (On Appeal Only), for appellant.

James A. Showers, Martin, Showers & Smith, Hillsboro, for appellees.

## OPINION

JAMES, Justice.

This is a suit by Plaintiff-Appellees W. W. Williams et al. against Defendant-Appellant John B. Williams to establish or impress a constructive trust upon a tract of 206 acres of land located in Hill County, Texas. After trial by jury the trial court entered judgment in favor of Plaintiff-Appellees impressing a constructive trust on the subject property and adjudicating the respective undivided interests of the parties in the subject land, from which Defendant-Appellant John B. Williams appeals. We affirm.

The parties both Plaintiffs and Defendant are all the heirs at law of J. J. Williams and his wife Dee Williams, both deceased. The subject land was part of the community estate of J. J. and Dee Williams, who had born to their marriage ten children who lived to adulthood, to wit, Lawton Williams, James J. Williams, Jr., Jack C. Williams, De Anna Shamburger, John B. Williams, Geraldine Horn, Otis G. Williams, Fred Williams, W. W. Williams, and J. G. Williams. At the time of trial three of the children had died each leaving heirs: Lawton Williams, leaving his widow, Mamie Williams and their daughter, Betty Joyce Williams; James J. Williams, Jr., leaving his widow, Virginia B. Williams and two sons, James L. Williams and George W. Williams; and Otis G. Williams, leaving only his son, Michael Don Williams. All of the hereinabove named

living heirs at law of J. J. and Dee Williams were parties to this suit except Jack C. Williams who conveyed his interest prior to trial to W. W. Williams. All of said heirs (other than Jack C. Williams) were Plaintiff-Appellees herein except John B. Williams who is the Defendant-Appellant.

J. J. Williams died intestate in 1949. His widow, Dee Williams, died intestate on October 4, 1967. Although Appellant produced during trial a copy of an instrument purporting to be a will of Dee Williams, there was never any proof offered as to the authenticity of the instrument, it was never probated, and was not admitted in evidence in this trial.

As stated Plaintiff-Appellees brought this suit against Defendant-Appellant John B. Williams to establish a constructive trust upon the subject land and for an adjudication of their asserted respective undivided interests in said land.

Trial was had to a jury, which found:

(1) That at the time of the deed from Dee Williams to John B. Williams dated November 19, 1956, there existed a confidential relationship between the said Dee Williams (mother) and John B. Williams (son).

(2) That said deed from Dee Williams to Defendant John B. Williams was induced by the agreement of John B. Williams to hold title to the property conveyed therein for the benefit of Dee Williams during her life and upon her death to divide the remaining property among her children.

(3) The Defendant John B. Williams held peaceable and adverse possession of the land in controversy, continuously cultivating, using and enjoying the same and paying taxes thereon, and claiming under a deed or deeds duly registered, for a consecutive period of five years or more prior to April 22, 1975.

(4) Special Issue No. 4 asked the jury: "Did the Plaintiffs know that Defendant was claiming the land in controversy in this suit adverse to them, if he was? Answer 'yes' or 'no' as to each Plaintiff." As to each Plaintiff the jury answered "no." In other words, the jury failed to find that any of the Plaintiffs knew that Defendant was claiming the land adversely to them.

(5) Special Issue No. 5 was submitted conditionally upon a "yes" answer as to any of the Plaintiffs listed in Special Issue No. 4, and therefore was not answered.

(6) Special Issue No. 6 inquired of the jury: "Did the Defendant assert adverse possession, if any, to the property in controversy in this suit against the Plaintiffs, such as was and is of such unequivocal notoriety that the Plaintiffs would be presumed to have notice of such adverse claim and possession? Answer 'yes' or 'no' as to each Plaintiff." As to each Plaintiff separately the jury answered "no." Stated differently, the jury failed to find that the Defendant asserted adverse possession to the subject property against the Plaintiffs of such unequivocal notoriety that Plaintiffs would be presumed to have notice of such adverse claim and possession.

There were eleven other special issues submitted to the jury, all of which were conditionally submitted, which under the above findings were not necessary to be answered, and which were not answered by the jury.

After verdict the trial court entered judgment in favor of Plaintiffs collectively for an undivided nine-tenths (9/10ths) interest in the land, and adjudged Defendant John B. Williams to own an undivided one-tenth 1/10th) interest therein, from which judgment Defendant appeals.

Defendant-Appellant asserts error on the part of the trial court as follows:

(1) In failing to render judgment for Defendant-Appellant because the affirmative answer of the jury to Special Issue No. 3 (the five year limitation issue) entitled Defendant-Appellant to judgment;

(2) In rendering judgment for Plaintiff-Appellees because the jury's affirmative answers to Special Issues Nos. 1 and 2 are separately and collectively not legally sufficient to support the judgment because they are "immaterial and evidentiary issues" which should have been disregarded by the trial court;

(3) In rendering judgment for Plaintiff-Appellees because the answer of the jury to Special Issue No. 3 is in conflict with the jury's answer to No. 4;

(4) That the judgment is erroneous because the jury's answer to Special Issue No. 3 is in conflict with that of Special Issue No. 6;

(5) There is no evidence to support the jury's answer to Special Issue No. 1 to the effect that there was a confidential relationship between Dee Williams and John B. Williams at the time of the deed dated November 19, 1956; and

(6) Lastly, Appellant asserts that the community one-half interest of Dee Williams and the one-tenth interest of W. W. Williams were not conveyed by Plaintiffs to Dee Williams by their deed of June 1956; therefore, such interests could not be subject to any constructive trust.

We overrule all of Appellant's points of error and affirm the trial court's judgment.

In June 1956, all of the children of J. J. Williams, then deceased (which of course were also all of the children of Dee Williams, the surviving widow), with the exception of W. W. Williams, conveyed their interest in the subject property to Dee Williams, subject to the understanding that she had made some type of arrangement with one of her sons, the Defendant-Appellant John B. Williams, for him to take control of the operation and maintenance of the property, so as to maximize her income therefrom to support her, to allow her to receive old-age assistance from the State of Texas, and upon her death divide the property among all the children of J. J. and Dee Williams in equal shares.

Thereafter, by a deed dated June 1956 but recorded in November 1956, Dee Williams conveyed the subject property to John B. Williams subject to the outstanding secured indebtedness against it. There was evidence that after said last-named deed, Dee Williams still considered the property to be hers, and that her son John B. Williams was managing the place for her. Also, there was testimony from all of the Plaintiffs who testified that they considered themselves cotenants.

After the death of Dee Williams in 1967, the Defendant John B. Williams maintained legal title, possession, and kept the income from the property without any accounting therefor to Plaintiff-Appellees. However, all of this conduct on the part of Defendant John B. Williams, including his possession under the recorded deed, was not considered by Plaintiffs to be adverse to their respective interests, for they felt certain that the property would in due time be divided and therefore none felt the necessity of making an immediate demand. There was testimony from some of the Plaintiffs that Defendant John B. Williams continued to assure them that he was planning on dividing the property among all of them, that is, until 1974. The Plaintiffs testified that it was not until 1974 that they received any type of notice or knowledge that John B. Williams was holding the property in a manner which was hostile to and in contravention of Plaintiffs' rights. The Defendant John B. Williams testified to the contrary that he made known to Plaintiffs as early as 1967 that he was claiming the place adversely against Plaintiffs.

Plaintiffs testified that as soon as they learned that John B. was claiming the title adversely to them, they sought legal counsel and commenced the instant litigation on April 22, 1975.

■ By Appellant's first point he asserts that the jury's affirmative answer to Special Issue No. 3 in his favor (the five year limitation issue) entitled him to judgment. We do not agree.

In answer to Special Issue No. 3 the jury found that John B. Williams held peaceable and adverse possession of the subject land, continuously, cultivating, using and enjoying the same and paying taxes thereon, and claiming under a deed or deeds duly registered for five consecutive years or more prior to April 22, 1975. The trial court defined "adverse possession" as "an actual and visible appropriation of the land, in person or through a tenant, commenced and continued under a claim of right inconsist-

ent with and hostile to the claim of another, and such that the Plaintiffs (naming each of them) had either actual knowledge that the Defendant had repudiated the title, if any, of the Plaintiffs and that the Defendant was claiming all title to the land as his own or that such adverse possession by the Defendant, in person or by his tenant, was so open, notorious and unequivocal as would put a person of ordinary care and prudence, in the same or similar circumstances as the Plaintiffs, and under the facts and circumstances in this case, upon notice that he had repudiated the title, if any, of the Plaintiffs and that the Defendant was claiming all title to the land as his own."

Since the jury found there was a confidential relationship between mother Dee Williams and son John B. Williams (Issue No. 1), that the deed from Dee Williams to John B. was induced by John B.'s agreement to hold title to the property for the benefit of Dee Williams during her life and upon her death to divide the remaining property among her children (Issue No. 2), that none of Plaintiffs either knew or by the exercise of reasonable diligence should have known John B. was claiming adversely to them (Issues Nos. 4 and 6), there is no way that Defendant-Appellant could be entitled to judgment because of the jury's favorable answer to him in Special Issue No. 3.

In view of the jury's answers to Issues 1 and 2, the ingredients of a constructive trust were established in favor of Plaintiff-Appellees concerning the subject property. This being so, and since Plaintiffs were cotenants with Defendant John B. Williams in the subject land, the burden was upon Defendant John B. Williams to go further than merely to show that he held adversely to Plaintiffs, but also to show a repudiation of the cotenancy relationship, and to bring home to Plaintiffs such repudiation with sufficient notoriety that Plaintiffs would have actual knowledge of such repudiation, or else bring such knowledge to Plaintiffs sufficiently to excite inquiry as to such repudiation. *Mills v. Gray* (1948) 147 Tex. 33, 210 S.W.2d 985; *Todd v. Bruner*

(Tex.1963) 365 S.W.2d 155. In the case at bar, Defendant-Appellant John B. Williams is in the position of a trustee, in view of the jury's answers to Special Issues Nos. 1 and 2. The statute of limitation does not begin to run in favor of a trustee and against the cestui until the latter has notice of a repudiation of the trust, and there is no duty on the part of the cestui to investigate at least until the cestui has knowledge of facts sufficient to excite inquiry. By entering into fiduciary relations, the parties consent as a matter of law to have their conduct measured by the standards of the finer loyalties exacted by courts of equity. *Courseview, Inc. v. Phillips Petroleum Co.* (1957) 158 Tex. 397, 312 S.W.2d 197, 205. For statement of the rule that for a cotenant to establish title by limitation against another cotenant, there must not only be the fact of adverse possession, but also an ouster and repudiation of the cotenancy relationship, with actual or constructive notice of the ouster, see *Republic Production Co. v. Lee* (Com.App.1938) 132 Tex. 254, 121 S.W.2d 973, 977, opinion adopted. Also see *Walton v. Hardy* (Waco Tex.Civ.App.1966) 401 S.W.2d 614, NRE (family relatives as cotenants); *Miller v. Huebner* (Houston 14th Tex.Civ.App.1971) 474 S.W.2d 587, NRE (brother-sister relationship between cotenants); *Fain v. Beaver* (Waco Tex.Civ.App. 1972) 478 S.W.2d 816, NRE (cotenancy among erstwhile friends); and *Oak Cliff Bank and Trust Co. v. Steenbergen* (Waco Tex.Civ.App.1973) 497 S.W.2d 489, NRE (brother and sister relationship).

In the case at bar, the jury specifically found that none of the Plaintiffs had knowledge of Defendant's repudiation of the cotenancy, nor was such repudiation of such unequivocal notoriety that Plaintiffs would be presumed to have notice of such repudiation. These findings are not challenged by Defendant-Appellant. In this state of the record, and in the light of the above-cited authorities, Defendant-Appellant is not entitled to a judgment in his favor because of the jury's "yes" answer to the five year limitation issue. Appellant's first point is overruled.

Next, Appellant contends the jury's answers to Issues No. 1 (confidential relationship between Defendant and his mother) and No. 2 (the deed to Defendant was induced by Defendant's agreement to hold title for the benefit of his mother and at her death to divide the property among her children) were immaterial and evidentiary issues which are not legally sufficient to support the judgment. We do not agree, and thereby hold that such findings in answer to Issues Nos. 1 and 2 form the basis for a constructive trust to be placed upon the property, with Defendant as trustee and Plaintiffs as cestuis, as well as a cotenancy relationship between and among the Plaintiffs and Defendant.

Appellant further asserts there is no evidence to support the jury's answer to Special Issue No. 1, to the effect that there was a confidential relationship between Dee Williams the mother and John B. Williams the son. The record shows ample evidence of such a confidential relationship. After J. J. Williams' death in 1949, his widow Dee Williams was in poor health and depended heavily upon her son John B. for advice and counsel. At times she had lived in a little house on the back of the home place where John B. and his family lived. John B. managed the farm, which was the old home place and the property in controversy, paid the taxes and expenses incident thereto, paid off the mortgage indebtedness on the place over a period of time, and at his mother's death he paid her funeral expenses. His mother's support was derived mainly from income from the farm. We overrule this point, and hold that the record contains ample evidence of a confidential relationship between this mother and son.

Next, Appellant asserts the jury's answer to Issue No. 3 (the five year limitation issue) on the one hand, is in irreconcilable conflict with the jury's answers to Issue No. 4 (Plaintiffs had no actual knowledge that Defendant was claiming adversely to them) and Issue No. 6 (Defendant's adverse possession was not of such unequivocal notoriety that Plaintiffs would be presumed to have notice of Defendant's adverse pos-

session), and that therefore the judgment cannot stand. We overrule this contention.

Special Issue No. 3 (the five year limitation issue) is general in nature, while Issues Nos. 4 (Plaintiffs' lack of actual knowledge) and 6 (Plaintiffs' lack of constructive notice) are specific in nature. It has long been held in negligence cases that a specific finding controls over what would otherwise be a conflicting answer to a general finding. *Barclay v. C. C. Pitts Sand and Gravel Co.* (Tex.1965) 387 S.W.2d 644 at p. 647; *Fort Worth and Denver Ry. Co. v. Britton* (Fort Worth Tex.Civ.App.1958) 310 S.W.2d 654, NRE; *Cunningham v. Suggs* (Eastland Tex.Civ.App.1960) 340 S.W.2d 369, 371, NRE; and *Bragg v. Hughes* (Galveston Tex.Civ.App.1932) 53 S.W.2d 151, no writ. We see no reason why this same rule should not apply in the case at bar. Therefore we overrule this point of error.

Appellant has other points and contntions. We have carefully considered each and all of same, and overruled them as being without merit.

Judgment of the trial court is accordingly affirmed.

AFFIRMED.